John LAGOS, Plaintiff–Appellant,

v.

MODESTO CITY SCHOOLS DISTRICT; Jerome Kopp; Joe Gregori; Bob Pokorny; Michael McKibban; Steven Greenbeaux; Ron Vermeulen; Alan Vincent; Dan Wood, Defendants–Appellees.

No. 87–2114.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1988.

Decided March 28, 1988.
As Amended May 31, 1988.

Panos Lagos, Oakland, Cal., for plaintiff-appellant.

Carolee Weber, Bolling, Walter & Gawthrop, Sacramento, Cal., for defendants-appellees.

Before WRIGHT, CHOY, and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

John Lagos sues under 42 U.S.C. § 1983 asserting that he has been injured by the defendants conspiring to deny him renewal of his year-to-year position as head baseball coach at Thomas Downey High School, a public school in Modesto, California. Lagos' complaint alleges that he was hired in 1974 by the Modesto City Schools District to teach physical education and mathematics and to be the head wrestling coach at Thomas Downey High School. In 1975 he became assistant varsity baseball coach and from 1978 until June 1985 he was head varsity baseball coach. The defendants, charged with depriving Lagos of his civil rights, are the school district, four named members of the school district board, the principal, vice principal and the athletic director of the high school, and another teacher at the school who in 1985 was made head varsity baseball coach in Lagos' stead. Lagos alleges that he has been deprived of property and liberty without due process and denied the equal protection of the laws. In the complaint filed on his behalf and verified by his brother, Panos Lagos, he states that he is entitled to damages of not less than $1,500,000, attorneys fees, exemplary damages and punitive damages.

Lagos' employment as baseball coach was by virtue of a contract good for one year that was not renewed in June of 1985. Lagos seeks to get around the contract by stating that when in 1974 he left Marysville he was orally assured by the then principal of Downey High School that he would "be ultimately placed in his 'strength' position" coaching baseball; that he was never told that his baseball position would be a one year position; that in 1983 the present principal told him that he would "pull for him"; that he was replaced because of the defendants' "personal likes and preferences"; and that it was "the custom, practice and procedure" of the school district that it would keep coaches in their coaching positions as long as they "performed their tasks satisfactorily."

Lagos' amended complaint was dismissed by the district court for failure to state a cause of action. We review anew. Lagos' efforts to surmount the obvious barrier of the time limitation built into his one-year contract merit no discussion except for his claim that there was a practice which converted the one-year contract into something more. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). This contention runs squarely into California Education Code Section 44923, which provides:

> In the event a permanent employee of the school district has tenure as a full-time employee of the district, any assignment or employment of such employee in addition to his full-time assignment may be terminated by the governing board of the district at any time.

Lagos was a permanent employee of the school district having tenure as a full-time teacher of mathematics. His assignment as baseball coach falls within the language of the statute. The statute gave notice to Lagos that there was no custom in California of creating tenure for coaches who were already employed as full-time teachers in a school.

Lagos argues that he had a constitutionally protected property interest in his coaching job. We have held that California does not recognize a property interest in a community college district superintendent in his job as superintendent. *Loehr v. Ventura Community College District*, 743 F.2d 1310 (9th Cir.1984). We noted that provisions of the California Education Code defined and confined the superintendent's rights.

In *San Bernardino Physicians Services Medical Group*, 825 F.2d 1404 (9th Cir. 1987), we held that a medical services group's contract with a county did not constitute constitutionally protected property. In broad dictum we suggested that employment contracts were more easily protectible than other contracts and that crucial factors in treating them as property were the security with which they were held under state law and the importance they had to the employee as an individual. *Id.* at 1409. The Supreme Court has affirmed a case holding on its particular facts that a school athletic director and football coach had property in his employment contract. *Vail v. Board of Education*, 706 F.2d 1435 (7th Cir.1983), *aff'd by an equally divided Court*, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984). In *Vail* the athletic director was persuaded to give up the job in Joliet he had held for thirteen years, take a salary cut, and move to Paris, Illinois to rejuvenate its athletic program, a feat he did not believe could be accomplished in one year. His new contract was formally for one year but the board of education promised him that it would renew him for a second year. The board, instead, terminated him in the first year, invoking Illinois law which required only 60 days' notice to terminate a new teacher. *Id.* at 1436. Upholding the director's section 1983 claim, the district court found that he had in fact a two-year employment contract, which constituted property, arbitrarily and therefore unconstitutionally taken by the board. The court of appeals did not find the district court's finding of fact clearly erroneous. *Id.* at 1438. As a mat-

ter of law the court of appeals held that a two-year contract was not unlawful in Illinois, that the board had exercised its legal discretion to give such a contract, and that Vail was not claiming any right of tenure, "which would have been extinguished by the actions of the Board." *Id.* at 1439. Judge Posner dissented on the ground that this "squabble" between a school and its football coach should not have been in the federal courts. He protested that if the majority was right, every breach of a public employment contract by a public body could be turned into a constitutional tort, *id.* at 1450, a result "contrary to every principle of federalism and good sense." *Id.* at 1456.

As the Supreme Court divided evenly, "no principle" was "settled" by *Vail. The Antelope* 23 U.S. (10 Wheat.) 66 at 126, 6 L.Ed. 268 (Marshall, C.J.); *see Neil v. Biggers*, 409 U.S. 188, 191–92, 93 S.Ct. 375, 378, 34 L.Ed.2d 401 (1972). In *Smith v. Board of Education*, 708 F.2d 258 (7th Cir.1983) another panel of the Seventh Circuit considered whether a high school head football coach for 26 years had tenure in his coaching job, protectible as property under the Constitution, and held that he did not. The facts alleged in *Smith* are close to those alleged by the plaintiff in this case. In *Smith*, as in this case, they do not state a cause of action.

Lagos' contract was good for one year. He alleges nothing from which it could be inferred that he was promised the head coaching position for life. An individual's interest in his employment is a reasonable factor to be considered in determining whether he has property in his job, and there is no doubt that Lagos had a high emotional investment in his coaching position. But an individual's interest cannot unilaterally create property. The security with which the job is held is also relevant. *San Bernardino Physicians, supra* at 1409. Lagos had no security. The board hired him from year to year. The allegation of a custom to the contrary is refuted

as a matter of law by the California Education Code Section 44923. Lagos continues to enjoy tenure as a mathematics teacher. California expressly does not grant tenure in assignments additional to regular full-time assignments. California created no property for Lagos of which he has been arbitrarily deprived. *Loehr, supra* at 1315; *Barthuli v. Board Trustees,* 19 Cal.3d 717, 566 P.2d 261, 139 Cal.Rptr. 627 (1977), *cert. denied* 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978).

■ Lagos also has no constitutionally recognized liberty interest infringed by the defendants. He has not been stigmatized by his non-renewal; he has not been so burdened that he cannot take advantage of other employment opportunities. *Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1101 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). Who is a good coach is apt to be the subject of debate. It is no shame to lose one's job in such an argument. We were assured in oral argument that John Lagos' coaching record was "excellent." We can understand his pain at not being renewed, at not having the continued opportunity to do what he loves to do. But his disappointment is not a loss of that liberty which the Constitution guarantees.

Lagos' equal protection claim has not been pressed on appeal. His pendent state claim for defamation has been rightly dismissed. The district court was correct in granting the defendants' motion to dismiss the entire case.

As a result of his disappointment Lagos has made the school district and the individual defendants defend a federal law suit both in the district court and on appeal. He has subjected them to the payment of their attorneys fees. He has asked for very large actual damages. When queried in oral argument how he had arrived at these damages, counsel replied that they were based on the loss of Lagos' coaching stipend (not more than $1500 per year) and the fact that "in an Alameda County case" he knew of someone getting a $300,000 verdict in what seemed to him analogous circumstances. It is extraordinarily difficult to see what justification existed for the verified complaint's assertion that Lagos' damages were not less than $1.5 million. We do not sympathize with any effort to make uncomfortable or intimidate the individual defendants or the board by claiming an astronomical amount not based on any identifiable facts.

AFFIRMED.