Louis P. CAMPANELLI,
Plaintiff–Appellant,

v.

Robert L. BOCKRATH, and Daniel
Boggan, Defendants–Appellees.

No. 94–15761.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1995.

Decided Nov. 22, 1996.

Before NORRIS, BEEZER and TROTT, Circuit Judges.

WILLIAM A. NORRIS, Senior Circuit Judge:

In 1993, appellant Louis Campanelli was fired from his job as head coach of the men's basketball team at the University of California at Berkeley. In this action under 42 U.S.C. § 1983, he claims that two University officials, Robert Bockrath and Daniel Boggan, deprived him of his liberty interest without due process by making negative public statements regarding his termination. The district court dismissed Campanelli's complaint for failure to state a claim on which relief may be granted. Fed.R.Civ.P. 12(b)(6). The question on appeal is whether Campanelli has sufficiently alleged the elements of a due process violation.

I

In his complaint, Campanelli alleges the following: On February 8, 1993, about midway through the college basketball season, Louis Campanelli was fired from his job as head coach of the men's basketball team at the University of California at Berkeley. Pursuant to the terms of Campanelli's employment contract with the University, then-Athletic Director Robert Bockrath recommended Campanelli's termination and Vice-Chancellor Daniel Boggan, acting on Bockrath's recommendation and on behalf of the University regents, effected the termination. At the time of his termination, Campanelli had compiled a season win-loss record of 10–7, with a 4–5 record in conference play. Campanelli's career record at the University was 123–108, a winning percentage that was better than those achieved by the four head coaches who had preceded him.

Campanelli's termination was widely covered by the national press. University officials initially declined to state the reasons for the termination. However, on February 15, 1993, the *San Francisco Chronicle* printed an article setting forth Bockrath's statements regarding the reasons for the termination.

Lawrence Alioto, San Francisco, CA, and Joseph L. Alioto, San Francisco, CA, for plaintiff-appellant.

Jeffrey A. Blair, Office of the General Counsel, University of California, Oakland, CA, for the defendants-appellees.

Jake Curtis, *Bockrath Offers Details on Firing of Campanelli*, S.F. Chron., Feb. 15, 1993, at C4.[1] The article reported that Bockrath had recommended Campanelli's termination after overhearing Campanelli's postgame speech to his players following the team's loss to Arizona State on February 4, 1993. According to Bockrath, Campanelli's speech was "profane and abusive," and different from other coaches' behavior: "I know coaches swear. I can swear with any of them. This was different." *Id.* In response to the reporter's questions, Bockrath indicated that Campanelli's speech to his players was "different" because of the "personal nature" of his criticism. *Id.*

In a separate article published on February 14, 1993, the *Chronicle* reported Vice-Chancellor Boggan's statement of the reasons for Campanelli's termination. C.W. Nevius, *Cal Grew Weary of Lou's Tirades*, S.F. Chron., Feb. 14, 1993, at E1. Boggan told the *Chronicle* reporter that Campanelli had put so much pressure on his players that point guard Jason Kidd became physically ill and three other players were considering transfers to other schools. *Id.* Boggan stated that Campanelli had been "tear[ing] the kids down," and that he "lit them up" after their loss to Arizona State on February 4. *Id.*

In the days following the publication of the *Chronicle* articles, the *Washington Post* and *The New York Times* picked up the story of Campanelli's firing. On February 17, the *Post* printed an editorial praising the University's decision to fire Campanelli. Tony Kornheiser, *When the Boot Fits*, Wash. Post, Feb. 17, 1993, at C1. The editorial quoted Bockrath's statement that "the players were beaten down and in trouble psychologically" due to Campanelli's "incredibly bad" postgame speech at Arizona State.[2] The *Post* reporter characterized Campanelli as an "abusive bully" who "perpetuat[ed] a cycle of

abuse" and "psychologically attack[ed]" his players. *Id.*

On August 18, 1993, Campanelli filed suit in district court against Bockrath, Boggan, and the University regents. On October 27, 1993, the district court dismissed all claims against the University regents without leave to amend, and dismissed the claims against defendants Boggan and Bockrath with leave to amend. On November 16, 1993, Campanelli filed his first amended complaint, asserting claims against Bockrath and Boggan only under 42 U.S.C. § 1983 and various state laws. On March 31, 1994, the district court dismissed Campanelli's section 1983 claims under Federal Rule of Civil Procedure 12(b)(6) and exercised its discretion to decline jurisdiction over his pendent state law claims.

## II

Campanelli's section 1983 action is rooted in the Fourteenth Amendment principle that a state may not deprive a person of his liberty interest "to engage in any of the common occupations of life" without due process of law.[3] *See Board of Regents v. Roth*, 408 U.S. 564, 572–73, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). In *Roth*, the Supreme Court held that a public employer could be held liable for a procedural due process violation for terminating an employee if the employer made a charge "that might seriously damage [the terminated employee's] standing and associations in his community" or "imposed on [a terminated employee] a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. The Court said that the requisite stigma could result from a charge of "dishonesty" or "immorality."[4] *Id.*

In this lawsuit, Campanelli concedes that the defendants did not breach his contract by

---

1. This newspaper article, and the other three articles discussed below, were appended to and incorporated in Campanelli's first amended complaint.

2. The New York Times also quoted this statement by Bockrath. Tom Friend, *Words Got the Best of Cal Coach*, N.Y. Times, Feb. 15, 1993, at C1.

3. Although Campanelli also alleged deprivation of a property interest, he does not challenge the district court's dismissal of that claim on appeal.

4. We note at the outset that this is not a case involving charges of "dishonesty" within the meaning of *Roth*.

firing him, and does not, therefore, complain about his termination *per se.* Rather, he claims that he was entitled to a name-clearing hearing, at or near the time of his termination, that could have mitigated the effect of the defendants' statements. Campanelli complains that he was denied notice and an opportunity to be heard, and as a result, the defendants' public statements regarding his termination have made it impossible for him to secure a new job as a college basketball coach. Campanelli seeks damages for mental suffering, emotional distress, and loss of income due to his inability to get another job.

In dismissing this action under Federal Rule of Civil Procedure 12(b)(6), the district court held that Campanelli failed to allege facts that could prove three of the required elements of a *Roth* claim. First, the court held that Campanelli failed to allege that the defendants' statements stigmatized him within the meaning of *Roth.* Second, the court held that Campanelli failed to allege that the defendants' statements were made "in the course of" his termination, as required by *Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). Finally, the court held that Campanelli failed to allege that the defendants' statements were "substantially false," as required under *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977).

■ We review the district court's order of dismissal under Rule 12(b)(6) *de novo. Stone v. Travelers Corp.,* 58 F.3d 434, 436–37 (9th Cir.1995). Our review is limited to the contents of Campanelli's complaint. *Argabright v. United States,* 35 F.3d 472, 474 (9th Cir.1994). We accept all of Campanelli's allegations of material fact as true and construe them in the light most favorable to him. *National Wildlife Fed'n v. Espy,* 45 F.3d 1337, 1340 (9th Cir.1995). We will affirm the district court's order of dismissal only if it appears "beyond doubt" that Campanelli can prove no set of facts in support of his claim that would entitle him to relief. *Mountain High Knitting, Inc. v. Reno,* 51 F.3d 216, 218 (9th Cir.1995).

**A**

■ In support of their Rule 12(b)(6) motion to dismiss, the defendants maintain that Campanelli's allegations do not satisfy *Roth's* stigma requirement. They argue Campanelli alleges only "that the defendants dismissed him because of a perception that his admitted emotional outbursts rendered him ineffective with players." Appellees' Br. at 8.

Campanelli alleges that "[t]he charges made in the press by Boggan and Bockrath after [his termination] have placed a stigma upon [his] good name, reputation, honor and integrity that has foreclosed his freedom to take advantage of other employment opportunities as a college basketball coach." First Amended Complaint (Compl.) ¶ 23. As a result, Campanelli alleges he

> has been unable to find employment as a college basketball coach, despite diligent efforts. He has been told on more than one occasion that the circumstances of his firing at Berkeley are the reason why it will be very difficult for Campanelli to find comparable employment.

Compl. ¶ 18. In addition to making these general allegations, Campanelli points to specific statements made by the defendants to support his claim that the defendants stigmatized him. In claiming that the defendants' statements rose to the level of imposing stigma, Campanelli alleges, *inter alia,* that: Bockrath publicly stated "the reason for Campanelli's firing was verbal personal abuse"; Boggan told the press Campanelli "tore the kids down" and had put so much pressure on Jason Kidd, that Kidd became physically ill, *id.* ¶ 14; and *Washington Post* writer Tony Kornheiser reported Bockrath's and Boggan's comments by calling Campanelli " 'an abusive bully' who 'cursed his players incessantly,' " and did psychological damage to the players, *id.* ¶ 15. Through the newspaper articles appended to and incorporated into Campanelli's first amended complaint, Campanelli alleges, *inter alia,* that Bockrath described Campanelli's players as "beaten down and in trouble psychologically," Compl. Exhibit C, and described Campanelli's swearing as "unwarranted and inappro-

priate and inexcusable" "personal attacks" on his players. Compl. Exhibit D.

■ The question whether the defendants' statements rose to the level of stigmatizing him within the meaning of *Roth* is a question of fact. We believe that Campanelli's allegations, which we must accept as true, satisfy the pleading requirements of Rule 12(b)(6). We cannot say that it is "beyond doubt" that Campanelli can prove no set of facts in support of these allegations that would support a finding that he was stigmatized within the meaning of *Roth. See Mountain High,* 51 F.3d at 218. The facts alleged in the complaint give him at least a fair chance of proving that the defendants placed a stigma on his name by singling him out as a coach who crossed the line dividing acceptable from unacceptable behavior in coaching. In other words, Campanelli has a reasonable chance of proving that he has been charged with immoral conduct within the meaning of *Roth* by abusing the young men entrusted to his care and supervision.

In light of the defendants' alleged statements that Campanelli personally attacked his players to the point that his players became physically ill and were "in trouble psychologically," we cannot say that it is beyond doubt that Campanelli could prove that the defendants' statements constituted charges of morally reprehensible behavior. When the evidence is marshalled, a finder of fact could possibly construe the defendants' statements as accusing Campanelli not just of yelling and cursing at his players, but of engaging in a campaign of abuse devoid of any constructive purpose, calculated instead simply to inflict harm. Campanelli's allegations that the defendants charged him with deliberately abusing the "kids" in his charge through incessant, malicious attacks that resulted in psychological damage could be proven to constitute charges of immorality. *Cf. Kendall v. Board of Educ.,* 627 F.2d 1 (6th Cir.1980) (charges that kindergarten teacher deliberately abused her students, or at least covered up their abuse by failing to report burns on their bodies, can violate the teacher's liberty interest). Moreover, the alleged statements that Campanelli continuously abused his young players may be proven

to constitute stigmatization if they suggest that Campanelli was himself psychologically unbalanced. *Cf. Stewart v. Pearce,* 484 F.2d 1031, 1034 (9th Cir.1973) (holding dean's order to college English instructor to undergo psychiatric examination implied "mental unfitness for the job" sufficient to meet *Roth*'s stigma requirement). As Campanelli argues on appeal, the facts he alleges show he has a chance of proving that his reputation was so severely damaged that he was blacklisted in the world of basketball, *see Stretten v. Wadsworth Veterans Hosp.,* 537 F.2d 361, 366 (9th Cir.1976):

> The players are 18 to 24 year old students entrusted to the Coach's tutelage. He is their mentor. A charge that a coach has inflicted psychological abuse upon his players, made them physically ill, torn them down, if true, is likely to deprive that coach of any opportunity to work as a coach.

Appellant's Br. at 13.

In support of their motion to dismiss, the defendants cite several Ninth Circuit cases which, they argue, show that their statements are not stigmatizing under *Roth* as a matter of law. As we read these cases, they are all inapposite. For example, although *Lagos v. Modesto City Sch. Dist.,* 843 F.2d 347 (9th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988), involved a college football coach who was terminated, the similarity ends there. In *Lagos,* we affirmed a Rule 12(b)(6) dismissal, holding that the plaintiff coach's liberty interest had not been infringed because the only injury alleged was the failure to renew his contract. Unlike the defendants here, the employer in *Lagos* had made no public statements at all regarding the termination. In *Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1096 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982), the plaintiff attorney was charged with shouting profane and abusive language at a secretary. We held on summary judgment that the defendant's statement was merely a charge of plaintiff's inability to get along with co-workers. In contrast to Campanelli's case, the alleged abuse in *Bollow* was directed at an adult co-worker, not at students entrusted to the plaintiff's care and supervision. Thus, in

Campanelli's case, a finder of fact could find that the statements made by Boggan and Bockrath charge far more serious misconduct than the statements made by the employer in *Bollow*. In fact, a reasonable factfinder could find that Boggan and Bockrath accused Campanelli of psychologically abusing "kids" who were under his supervision. Compl. ¶¶ 14, 24, 28. Moreover, *Bollow* rested its holding on the lack of public disclosure of the reasons for the firing, *Bollow*, 650 F.2d at 1101, an issue not relevant to this case. Thus, *Lagos* and *Bollow* do not foreclose Campanelli's claim that the defendants' statements stigmatized him within the meaning of *Roth*.[5]

The district court, in dismissing Campanelli's action at the pleading stage, seized upon a single argument found in Campanelli's opposition papers as a dispositive concession that the defendants had accused Campanelli only of incompetence, not immorality. The excerpted argument, drawn from Campanelli's memorandum opposing the motion to dismiss, reads as follows:

> Defendants wish to characterize the charges ... as a mere failure ... to get along.... Defendants should read the exhibits attached to the First Amended Complaint. What they charged plaintiff with is *a general unfitness to coach college players*. Fourteenth Amendment protections are not limited to charges of stealing or immorality.

Order 15, ER 82 (quoting Plaintiff's Opposition to Motion to Dismiss at 5) (emphasis and omissions in original). The district court held that "general unfitness" was not distinguishable from incompetence, and thus concluded that Campanelli had conceded that the defendants' charges were not stigmatizing under *Roth*. With all due respect, we believe the district court acted too harshly in pulling a single statement out of Campanelli's argument and interpreting it as vitiating all the factual allegations made in his complaint. In context, a plausible interpretation of Campanelli's argument is that Campanelli used the term "general unfitness" in contrast to "a mere failure ... to get along," in order to deny that the defendants had accused him merely of incompetence. Indeed, Campanelli argues on appeal that the term "general unfitness" was never meant to be a concession, but instead was intended to refer to charges of emotional instability, mental illness, and psychological abuse—charges "far more morally reprehensible" than mere incompetence.

---

5. The other three Ninth Circuit cases cited by defendants are also inapposite. *See Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1318 (9th Cir.1984); *Debose v. United States Dep't of Agric.*, 700 F.2d 1262, 1266 (9th Cir.1983); *Gray v. Union County Intermediate Educ. Dist.*, 520 F.2d 803, 806 (9th Cir.1975). In all three cases the due process claims were rejected, after a review of the evidence, for failure to meet the *Roth* standard, while Campanelli's case is only at the pleading stage. Moreover, all three cases are clearly distinguishable on their facts because they involve nothing more than charges of general incompetence. *See Loehr*, 743 F.2d at 1318 (community college trustees fired college supervisor, publicly implicated supervisor in ongoing noncriminal grand jury investigation, and cited as reasons for his removal "gross incompetence," faculty and management criticism of his centralized administration, budget cuts followed by quick spending of cash surplus, an athletic scandal during his tenure involving false student transcripts, and the conflict of interest of the district auditor during his administration); *Debose*, 700 F.2d at 1264, 1266 (government employer fired agronomist for failure to meet performance standards regarding the quantity and quality of his soil inspection work); *Gray*, 520 F.2d at 806 (state welfare department charged special education teacher with "deliber-

ately undermin[ing]" the united planning of the community's professional social agencies, "insubordination, incompetence, hostility toward authority, and aggressive behavior" for challenging the welfare department's decision not to allow student to have therapeutic abortion). The defendants argue that these three cases involved conduct that was similar or "more egregious" than the conduct at issue in Campanelli's case, Appellees' Br. at 9–10, and the district court agreed with the defendants and as to *Loehr* and *Gray*, but did not address *Debose*. Order at 13–14. However, neither the district court nor the defendants have backed up their views with analysis.

The out-of-circuit cases cited by the defendants are also inapposite. *See Bunting v. City of Columbia*, 639 F.2d 1090, 1094 (4th Cir.1981) (statement that plaintiffs' "services did not meet the expectations of the police department" did not create requisite stigma); *Gentile v. Wallen*, 562 F.2d 193, 197 (2d Cir.1977) (statement that plaintiff elementary school teacher colluded with school principal to falsify principal's evaluation of her performance never publicly disclosed); *Jefferson v. Ashley*, 643 F.Supp. 227, 231 (D.Or. 1986) (statement that plaintiff used excessive sick leave and had "trouble getting along with co-workers" did not amount to stigma).

*See* Appellant's Br. at 16–17. Thus, Campanelli's use of the words "general unfitness" in an argument should not be read as a fatal concession that he was not stigmatized.

## B

To survive the defendants' motion to dismiss, Campanelli must also allege that the defendants made their statements "in the course of" his termination. *Paul*, 424 U.S. at 710, 96 S.Ct. at 1165. In urging us to dismiss Campanelli's complaint because the statements were made one week after Campanelli's termination, the defendants ask us to adopt a bright-line rule that defamatory statements made by an employer any time after the date of termination are not made "in the course of the termination."

It is not altogether clear whether Ninth Circuit law forecloses us from considering the adoption of such a *per se* timing rule.[6] In *Matthews v. Harney County*, 819 F.2d 889 (9th Cir.1987), the plaintiff based his procedural due process claim in part on newspaper articles published after his termination. Without discussing the timing issue, we held that the plaintiff had adequately alleged that the charges at issue were "made in connection with termination of employment," as required to allege a deprivation of a liberty interest under *Paul. Id.* at 891–92. We then remanded the case for a determination whether the plaintiff's liberty interests had been infringed, and expressly instructed the district court to consider the newspaper articles in its determination. *Id.* at 894. We believe *Matthews* may be read as implicitly rejecting a rule that post-termination statements cannot form the basis of a due process violation.

Even if *Matthews* did not so hold,[7] we believe that *Paul*'s "in the course of the termination" requirement does not rule out the use of all post-termination statements. Accordingly, we hold that the "in the course of" requirement may be met when defamatory statements are so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye. In doing so, we join four other circuits which have decided the question. *See Mertik v. Blalock*, 983 F.2d 1353, 1363 (6th Cir.1993) (allegations that defendants made statements "roughly contemporaneously" with deprivation of right satisfied pleading requirements for due process violation); *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 n. 17 (5th Cir.1984) (stigmatizing charges must "occur in connection with, and be closely enough related to, the employee's nonrenewal or discharge so as to cause that action to be stigmatizing"); *Hadley v. County of Du Page*, 715 F.2d 1238, 1246–47 (7th Cir.1983) (defamation "must occur at or near the time of . . . termination"; referred to article published six days after termination as defamation "at the time of" termination), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984); *Ray v. Tennessee Valley Auth.*, 677 F.2d 818, 824 (11th Cir.1982) ("we hesitate to set a temporal limit on the relationship between the alleged defamation and the other deprivation action," in determining whether plaintiff stated a due process claim), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983).

The defendants rely on *Gentile v. Wallen*, 562 F.2d 193 (2d Cir.1977), for the proposition that post-termination statements cannot satisfy *Paul*'s "in the course of the termination" requirement as a matter of law.

---

**6.** None of the Ninth Circuit cases cited by the defendants decide this question. *See Clemente v. United States*, 766 F.2d 1358, 1366 (9th Cir. 1985), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986) ("in the course of" requirement not at issue because there was no stigma); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1319 (9th Cir.1984) (employer's statements made four days after termination did not satisfy the stigma requirement; issue whether statements made after the effective date of termination can deprive a plaintiff of a liberty interest expressly avoided); *Debose v. United States Dept. of Agr.*, 700 F.2d 1262, 1266

(9th Cir.1983) ("in the course of" requirement not at issue because there was no stigma).

**7.** The facts in *Matthews* are somewhat murky. The newspaper articles at issue in *Matthews* were published at least one week after the plaintiff had been terminated, but they may have reported exclusively on statements made concurrently with the termination. Thus, we cannot be sure whether *Matthews* involved post-termination statements or only pre-termination statements published in a newspaper at a later time. *Id.* at 894.

We agree that *Gentile* holds that a "communication [that] occurred after appellant was terminated and hence, in the absence of an employment relationship, amounted to at most the type of simple defamation that the Supreme Court held not to trigger due process rights in *Paul*." *Id.* at 198. We, however, decline to follow *Gentile*. Our interpretation of *Paul*'s "in the course of the termination" requirement—that it does not rule out all post-termination statements—is consistent with *Matthews* and brings the Ninth Circuit into line with the four other circuits that have rejected such a bright-line timing rule.[8]

■ In rejecting defendants' proposed bright-line rule, we do not say that the timing of an employer's statements is of no consequence at all. Common sense and the reasoning of *Paul* dictate that there must be some temporal nexus between the employer's statements and the termination. At some point, defamatory statements may become too remote in time from the termination to be considered made "in the course of the termination." *See Hadley*, 715 F.2d at 1246 (" '[t]here comes a point in time when post termination publication of defamation becomes sufficiently remote from the termination itself so as to make it no longer within "the course of termination of employment," ' thereby eviscerating the nexus required by the stigma plus test") (quoting *Duggan v. Town of Ocean City*, 516 F.Supp. 1081, 1085 (D.Md.1981)); *Ray*, 677 F.2d at 824 (hesitating to set temporal limit but holding six year lapse is long enough to sever temporal nexus of statements to employment termination).

■ Once we reject defendants' bright-line test, it becomes clear that Campanelli's allegations satisfy the "in the course of" requirement for pleading purposes. The defendants' statements set forth the reasons for Campanelli's termination, and it is not "beyond doubt," *see Mountain High*, 51 F.3d at 218, that Campanelli can prove that the seven- to nine-day interval between the termination date and the publication of the defendants' statements did not attenuate the temporal connection between the statements and the termination. Therefore, we hold that Campanelli's allegations that Bockrath's and Boggan's stigmatizing statements were made "in the course of the termination" are sufficient to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim.

The district court decided that Campanelli conceded that the defendants' statements were "completely separate from the termination," and relied solely on this supposed concession to hold that Campanelli did not meet the "in the course of" requirement. In reaching this conclusion, the district court relied on the following language from Campanelli's complaint:

> It is not the firing that plaintiff complains of in this case. It is the post-firing stigmatization and attendant foreclosure of other opportunities.

Order 13, ER 80 (quoting Plaintiff's Opposition to Motion to Dismiss at 2). We disagree with the district court's reading of the complaint. A plausible reading of the two sentences cited by the district court is that they are merely an explanation that Campanelli's claim was based not on his termination *per se*, but on the defendants' statements regarding his termination. Thus, the complaint should not be interpreted for Rule 12(b)(6) purposes as a fatal concession that the statements were not so closely related to his discharge that the discharge itself could become stigmatizing in the public eye, and thus were not actionable under the reasoning of *Paul*.

8. The Supreme Court did not address the question of the temporal nexus between the termination and the allegedly stigmatizing statements in *Paul*, and has yet to take a position on the question. *See Siegert v. Gilley*, 500 U.S. 226, 234, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991) (alleged defamation must be "uttered incident to the termination," but no definition of phrase "incident to"); *Owen v. City of Independence*, 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406 n. 13, 63 L.Ed.2d 673 (1980) (stigmatizing charges do not have to "cause" the plaintiff's discharge in order to satisfy the "in the course of the termination" requirement; no comment on the timing of the charges); *Bishop v. Wood*, 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976) (post-litigation statements could not form the basis of a due process claim, but no comment on post-termination statements generally).

## C

In order to state a due process claim, Campanelli also must allege that the defendants' statements were substantially false. *Codd,* 429 U.S. at 628, 97 S.Ct. at 884. In his first amended complaint, Campanelli clearly satisfies this requirement. It states in relevant part:

Campanelli denies that he is guilty of verbal abuse, personal attacks, or psychological or physical damages to his players, or that his criticism of his players, albeit stated in emphatic language and sometimes in four-letter words, is outside the norm of criticism which coaches generally may make to their players, or that he ever criticized any player or players except for the purpose of motivating them to play well.

Compl. ¶ 24; *see also id.* ¶ 30.

Nonetheless, the district court decided that Campanelli admitted the substantial truth of the defendants' statements in his complaint. The district court relied on Campanelli's statements (1) that he criticized his players "in emphatic language and sometimes in four-letter words," Compl. ¶ 24; (2) that he is a "strict disciplinarian," *id.* ¶ 8; and (3) that he "experienced a fit of anger" and "address[ed] sharp criticism" to his players after the Arizona games, *id.* ¶ 9. According to the court, "[p]laintiff's characterizations [of his behavior] and defendants' charges are differing descriptions of the same basic behavior." Order 15–16, ER 82–83.

■ By comparing the merits of plaintiff's and defendants' characterizations, the district court impermissibly went beyond the allegations of the complaint to play factfinder at the 12(b)(6) stage. We have already held that it is not beyond doubt that Campanelli could prove that the defendants accused Campanelli of psychologically abusing "kids" under his supervision, and from the face of the complaint, Campanelli specifically "denies that he is guilty of ... psychological ... damages to his players." Whether the defendants' charges are different from charges of strict discipline, profanity, sharp criticism, or a fit of anger is a question to be resolved on the basis of the evidence, not at the pleading stage. *See* Part II.A., *supra.* The words Campanelli used, their context, and his tone of voice, may or may not be in dispute. But whether the defendants' alleged characterization of events—that Campanelli verbally abused and psychologically damaged his players—is substantially false is an issue of fact that should not be decided at the 12(b)(6) stage. From the face of the complaint, we cannot hold at the pleading stage that Campanelli has conceded the truth of the defendants' alleged charges. The question of truth or falsity must be decided on the basis of the evidence.

The judgment dismissing Campanelli's complaint is REVERSED and the case is REMANDED for further proceedings.