**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT BOGGS, | No. 11-35713 |
| Plaintiff - Appellant, | D.C. No. 3:09-cv-00116-ST |
| v. | |
| JOHN K. HOOVER; JOHN C. BRADLEY; CHARLES R. FRENCH; KATHRYN A. SHORT; AGNES SOWLE, | MEMORANDUM[*] |
| Defendants - Appellees, | |
| and | |
| JO'EY STEWART, | |
| Defendant. | |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted November 7, 2012
Portland, Oregon

Before: ALARCÓN, McKEOWN, and PAEZ, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Robert Boggs appeals from the district court's grant of motions to dismiss and for summary judgment on qualified immunity grounds with respect to five of the defendants (the "Multnomah Defendants"), and the district court's grant of a motion to dismiss with respect to defendant Stewart. Boggs brought claims under 42 U.S.C. § 1983 alleging that the Multnomah Defendants and Stewart violated his Fourteenth Amendment right to notice and a name-clearing hearing in connection with the disclosure of his employment records containing allegedly stigmatizing statements. We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo, we affirm.

As a matter of law, it was unclear whether Boggs had a right to the claimed due process under the circumstances of his termination, thus entitling the Multnomah Defendants to qualified immunity. There is virtually no agreement on the start or end date of the temporal nexus required to trigger the procedural protections of due process. *Campanelli v. Bockrath*, 100 F.3d 1476 (9th Cir. 1996). Under *Cox v. Roskelly*, "placement of stigmatizing information in an employee's personnel file constitutes publication when the governing state law classifies an employee's personnel file as a public record." 359 F.3d 1105, 1112 (9th Cir. 2004). Here, it is not clear when Boggs's personnel file became a public record under Oregon law because that law makes employment records public upon

2

resignation but not when there is disciplinary action. Given the uncertainty as to the status of his withdrawn resignation, which had been secured under the threat of termination, the prospect of disciplinary action against Boggs lingered. Oregon law is ambiguous as to whether this sequence of events made Boggs's personnel file public and therefore whether "publication" had occurred for Fourteenth Amendment due process purposes. Boggs's employment records were not disclosed following a February 23, 2007 public record request, and it was not until May 10, 2007, when Boggs filed a civil suit related to his resignation, that the resignation became final and his employment record definitively classified as a public record.

Absent clear law on when publication of Boggs's employment record occurred, the temporal gap between resignation and publication was too attenuated to establish the necessary nexus, even construing all inferences concerning dates in Boggs's favor, as we must. In *Tibbetts v. Kulongoski*, we held that a nineteen day gap was too long to establish the necessary nexus under extant case law in February 2005 and June 2006, when the alleged violations in that case occurred. 567 F.3d 529, 538 (9th Cir. 2009). *Tibbetts* remains controlling law because no new cases were decided on the issue between the time of the alleged violations in that case and the time of the alleged violation in this case sometime in the first half

3

of 2007.  Whether we take January 5 or February 5, 2007 as the start date of the temporal nexus, a period far longer than nineteen days passed before Boggs's employment record was clearly public.  Qualified immunity was thus properly granted because Boggs's right to procedural safeguards was not "clearly established" and it would not have been "clear to a reasonable officer" that failure to provide Boggs with notice and a name-clearing hearing was "unlawful in the situation . . . confronted."  *Saucier v. Katz*, 533 U.S. 199, 201-02 (2001) (outlining a two-pronged qualified immunity analysis, the second prong of which requires that a right be clearly established for an official to be stripped of qualified immunity protection); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that district courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The district court erred by considering matters outside the pleadings in granting defendant Stewart's motion to dismiss on the basis that she was a clerical employee.  However, "[i]f the decision below is correct," we "may affirm on any ground finding support in the record."  *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 643 (9th Cir. 1989).  We affirm the district court's grant of Stewart's

4

motion to dismiss on the basis of qualified immunity consistent with the legal analysis above.

**AFFIRMED.**

*Boggs v. Hoover*, No. 11-35713

PAEZ, Circuit Judge, dissenting.

I respectfully dissent.

The majority's judgment rests on an incorrect interpretation of Oregon state law. The federal constitutional right clearly established by *Cox*—and the cases *Cox* relies on—is that a due process name-clearing hearing is required when placement of stigmatizing information in a public employee's personnel file constitutes publication. 359 F.3d at 1112. "Publication" is determined not by dissemination, but by whether the governing state law classifies an employee's personnel file as a public record. *Id.* Here, the governing state law clearly classified Boggs's personnel file as a public record not subject to any exemptions from disclosure, and thus it was clearly established that the placement of the stigmatizing report in his file implicated his liberty interest and triggered his right to due process. *Id.*; *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972) (declining to rehire may be "termination" for liberty interest purposes).

In the context of this case, there are two distinct "clearly established" questions that must be analyzed sequentially: 1) the clearly established constitutional right, and 2) whether the governing state law was clearly established such that officials had notice of whether due process protections were triggered in a given factual circumstance. Here, the constitutional right at issue is the right to a

name-clearing hearing when placement of stigmatizing information in a public employee's personnel file constitutes publication. *Cox*, 359 F.3d at 1112. Whether it was clearly established under Oregon's public records law such that officials would be on notice that a personnel file was a public record when stigmatizing information was placed in it is a question of state law.

Oregon law favors disclosure as the rule and classifies an employee's personnel file as a public record. Although Oregon law recognizes a personnel discipline exemption from disclosure, under ORS 192.501(12), the exemption does not apply when a public employee resigns during an employer investigation or in lieu of disciplinary action. *City of Portland v. Rice*, 775 P.2d 1371, 1373-74, n.4 (Or. 1989) ("'Action' is consistently used to mean the imposition of a disciplinary sanction, not an investigation of facts which does not . . . directly result in imposing a sanction. Public records of such an investigation are not exempt from disclosure."). Thus, because Boggs resigned from his position, albeit under threat of termination, there was no exemption from the public disclosure of Boggs's records. *Id.* at 1373-74; ORS 192.490(1). Notably, Defendants later came to the correct conclusion that Boggs's personnel file was indeed a public record because it was not subject to the discipline exemption. Testimony at an evidentiary hearing in Boggs's other civil case—permitted as evidence in this case—clearly shows that

2

Defendants Sowle and Hoover were on notice that Boggs's file and the investigation report were a public record. Reading the complaint in the light most favorable to Boggs, he alleged *publication* of "false, defamatory statements" as early as February 5, 2007—months before any disclosure to the press, and in conjunction with his attempt to revoke his forced resignation. A reasonable inference from this allegation is that by "publication" he meant placement of the stigmatizing information in his personnel file, which was a public record. Even if the fact of placement of the stigmatizing information in the file is disputed, Defendants are not entitled to qualified immunity on those grounds. That is an issue that should be resolved at trial.

The majority errs in its analysis that Oregon law "*makes* employment records public upon resignation but not when there is disciplinary action" and that Boggs's employment record was "definitively classified as a public record" on May 10, 2007, when he filed a civil suit and his resignation "became final." Mem. 2-3 (emphasis added). Boggs's record was not a private document that became a public one by his resignation or by filing his lawsuit. Under Oregon law, employment records are public by default, subject to certain conditional exemptions.[1]

---

[1] The majority also asserts that Oregon law is ambiguous as to whether Boggs's record was public given his forced resignation, rejected attempt to

The facts alleged in Boggs's complaint support two distinct violations of Boggs's due process rights. The first is the publication of the report by its placement in Boggs's personnel file in January or February 2007, in conjunction with his forced resignation and the county's refusal to reinstate him. As demonstrated above, these facts are sufficient to implicate Boggs's liberty interest and his clearly established constitutional right to a name-clearing hearing. *Cox*, 359 F.3d at 1110-12. The second is the widespread dissemination of the stigmatizing charges after Boggs's termination via the May 2007 release of his employment records in response to media requests. I agree with the district court that this later dissemination warrants a temporal nexus analysis under *Campanelli* and *Tibbetts*.

withdraw his resignation, and the lingering "prospect" of disciplinary action. Mem. 3. Oregon law is not ambiguous on this point. *See Rice*, 775 P.2d at 1373-74. Indeed, the following paragraph from the Attorney General's Public Records and Meetings Manual 41, (2005), served to put public officials faced with a situation exactly like the one here on notice that Boggs's personnel file was a public record:

> ORS 192.501(12) conditionally exempts: A personnel discipline action, or materials or documents supporting that action[.]
>
> Only completed disciplinary actions when a sanction is imposed, and materials or documents that support that particular disciplinary action, fall within the scope of this exemption. (Citing *Rice*, 775 P.2d 1371.) The exemption does not apply when an employee of a public body resigns during an employer investigation or in lieu of disciplinary action. The policy underlying this narrowly construed exemption is to "protect[ ] the public employee from ridicule for having been disciplined but does not shield the government from public efforts to obtain knowledge about its processes." (Citing *id.* at 1374, n.5.)

4

But this is not the only set of factual circumstances alleged in Boggs's complaint, and *Cox* makes clear that publication of an employee's file as a public record available upon demand—not necessarily dissemination to the media or widespread public disclosure—is sufficient to implicate a public employee's liberty interest and his right to a due process name-clearing hearing. 359 F.3d at 1111-12.

For these reasons, I respectfully dissent. Boggs's federal constitutional right to a name-clearing hearing when stigmatizing information was placed in his personnel file was clearly established as of 2004. *Cox*, 359 F.3d at 1112. Oregon public records law was clearly established such that officials had notice that his personnel file would be public, and thus placement of the stigmatizing information constituted publication. I would hold that the Defendants are thus not entitled to qualified immunity.

I would also reverse the district court's grant of Defendant Stewart's motion to dismiss because the district court erred by considering matters outside the pleadings and because, for the reasons stated above, the decision cannot be affirmed on the basis of the qualified immunity analysis. *Jackson v. S. California Gas Co.*, 881 F.2d 638, 642-43 (9th Cir. 1989).