**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 8 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

DAVID G. RENAUD,

     Plaintiff-Appellant,

v.

WYOMING DEPARTMENT OF
FAMILY SERVICES; SHIRLEY R.
CARSON, individually,

     Defendants-Appellees.

No. 98-8046

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF WYOMING
### (D.C. Civil Action No. 97-CV-143)

---

Bruce T. Moats (Jane A. Villemez with him on the briefs) of Villemez Law
Office, Cheyenne, Wyoming, for Plaintiff-Appellant.

Terry L. Armitage, Cheyenne, Wyoming, for Defendants-Appellees.

---

Before **EBEL**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

**McKAY**, Circuit Judge.

Plaintiff David G. Renaud brought this action in the United States District Court for the District of Wyoming for wrongful termination of his employment as superintendent of the Wyoming Boys' School. He asserted seven claims for relief. His first claim was that Defendant Wyoming Department of Family Services violated the Americans with Disabilities Act [ADA], 42 U.S.C. §§ 12101-12213. His second claim was that the Department violated the Family and Medical Leave Act [FMLA], 29 U.S.C. §§ 2601-2654. His third, fourth, and fifth claims, asserted under 42 U.S.C. § 1983, were against Defendant Shirley R. Carson, in her individual capacity. He alleged that Ms. Carson, then director of the Wyoming Department of Family Services, deprived him of his property and liberty interests without due process and violated his First Amendment rights of expression and association. His sixth and seventh claims, based on state law, were against both defendants for breach of an implied contract of employment created by Wyoming government personnel rules and policies and for intentional infliction of emotional distress.

The district court entered an order granting Defendants' motion for summary judgment in part and denying it in part. The court granted summary judgment to Ms. Carson on all claims against her and granted summary judgment to the Department on the state law claims. The case went to trial only on the claims under the ADA and the FMLA. The jury returned a verdict in favor of the

Department on both claims, and judgment was entered in favor of the Department.

On appeal, Plaintiff challenges the grant of summary judgment on his claims for deprivation of a liberty interest and breach of contract. He also challenges the court's jury instructions regarding the ADA claim, and he asserts a lack of evidence to support the jury finding on his FMLA claim.

I.

Plaintiff was superintendent of the Wyoming Boys' School from December 1985 through April 30, 1996. On Friday afternoon, March 29, 1996, following meetings in Casper, Wyoming, Plaintiff returned to his office on the Boys' School campus, where he had contact with six employees. On April 4, one of those employees, Tracy Norris, the education director at the school, reported to Les Pozsgi, administrator for the Division of Juvenile Services and Plaintiff's direct supervisor, that he believed that Plaintiff had been drunk when he returned to school on March 29. Mr. Pozsgi reported these allegations to Ms. Carson. On April 15, Ms. Carson placed Plaintiff on administrative suspension with pay to allow the Department of Family Services to investigate his alleged violation of Wyoming's substance abuse policy. On April 16, Plaintiff submitted a request for thirty days' sick leave and checked himself into a voluntary alcohol treatment program in a Wyoming hospital. Mr. Pozsgi granted the leave request. On

April 18, Ms. Carson and Mr. Pozsgi attempted to meet with Plaintiff for the purpose of terminating his employment, but Plaintiff's doctor did not allow the visit. On April 22, Ms. Carson sent a certified letter to Plaintiff at the hospital stating that she was dismissing him from his employment as an "at-will" employee effective April 30, 1996. She later testified that she fired him because he had come to work drunk in violation of the Wyoming substance abuse policy. On April 26, Ms. Carson allegedly contacted the Division of Criminal Investigation, and the Division broadcast a statewide bulletin indicating that Plaintiff had checked himself out of rehabilitation and might be suicidal and dangerous to others. Plaintiff, in fact, remained in an inpatient treatment program at that time.

## II.

We begin with the summary judgment issues. We review de novo a district court's grant or denial of summary judgment, and we apply the same legal standard employed by the district court pursuant to Federal Rule of Civil Procedure 56(c). See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). In reviewing such dispositions, we must draw all inferences in favor of the party opposing summary judgment. See Trujillo v. University of Colo. Health Sciences Ctr., 157 F.3d 1211, 1213 (10th Cir. 1998); Curtis v. Oklahoma City Pub. Sch.

<u>Bd. of Educ.</u>, 147 F.3d 1200, 1214 (10th Cir. 1998).

A.

Plaintiff asserts that Ms. Carson deprived him of his liberty interest by making false and damaging statements about him "accompanying his dismissal" or "when terminating his employment." Appellant's Br. at 37. He alleges that on April 26, 1996, while he remained in treatment at the hospital, Ms. Carson "caused the Division of Criminal Investigation to broadcast[] statewide . . . false and malicious allegations that he had checked out of rehabilitation and was dangerous." Appellant's App., Vol. 3 at 697. The bulletin broadcast indicated that he might be suicidal and, having recently lost a state job, might "try to go after state employees." <u>Id.</u> at 698. Plaintiff contends that the loss of his job, the false bulletin "'assassinating his character and reputation,'" and the "'pending loss of his home and the devastating effect of these events on his family'" forced him to leave rehabilitation prematurely. <u>Id.</u> He also contends that he has not been able to obtain employment in juvenile corrections since Ms. Carson terminated him. <u>See id.</u> Plaintiff alleges that these actions deprived him of a liberty interest without due process of law.

The Due Process Clause of the Fourteenth Amendment requires that no state "deprive any person of life, liberty, or property, without due process of law."

U.S. CONST. amend. XIV, § 2.  The Supreme Court has addressed the nature of the liberty interest protected under this provision, observing that "there can be no doubt that the meaning of 'liberty' must be broad indeed."  Board of Regents v. Roth, 408 U.S. 564, 572 (1972).

> "Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men."

Id. (quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923)).  The Court observed in dicta that a state might abridge a liberty interest if, in declining to renew an employment contract, the state made charges of dishonesty or immorality or imposed "a stigma or other disability that foreclosed [an employee's] freedom to take advantage of other employment opportunities."  Id. at 573.

The Court later clarified the scope of this interest.  In Paul v. Davis, 424 U.S. 693, 708-10 (1976), the Court held that defamation, standing alone, was not sufficient to establish a claim for deprivation of a liberty interest.  "[T]he defamation had to occur in the course of the termination of employment."  Id. at 710.  The court has further stated that no constitutional claim can be stated even where a defendant acts with malice in defaming another.  See Siegert v. Gilley, 500 U.S. 226, 234 (1991).

-6-

Applying Supreme Court precedent, we delineated a four-part test in

Workman v. Jordan, 32 F.3d 475 (10th Cir. 1994), that a plaintiff must satisfy to

demonstrate a deprivation of liberty:

> First, to be actionable, the statements must impugn the good name,
> reputation, honor, or integrity of the employee. Second, the
> statements must be false. Third, the statements must occur in the
> course of terminating the employee or must foreclose other
> employment opportunities. And fourth, the statements must be
> published.

Id. at 481 (citations omitted); see also Melton v. City of Oklahoma City, 928 F.2d

920, 926-27 (10th Cir. 1991) (en banc) (holding that elements are not disjunctive

but must all be satisfied).

Plaintiff alleges that the Division of Criminal Investigation's defamatory

broadcast that he might be suicidal and dangerous to others occurred in

conjunction with the termination of his employment and therefore abridged his

liberty interest. The district court held that "plaintiff's allegations do not show

[that] the statements were made in the course of terminating him." Appellant's

App., Vol. 3 at 702. Plaintiff, however, asserts that the defamatory statements

imposing a stigma need not be exactly contemporaneous with a dismissal to occur

in the course of the termination of employment. Plaintiff cites several cases for

this proposition, including Miller v. City of Mission, Kansas, 705 F.2d 368, 373

(10th Cir. 1983) (affirming jury finding of deprivation of liberty interest based

partly on evidence that reasons for termination were announced several days after

dismissal), Campanelli v. Bockrath, 100 F.3d 1476, 1482-83 (9th Cir. 1996) (rejecting bright-line rule that post-termination statements cannot form basis of liberty deprivation and holding that statements made one week after termination were made in course of termination), and Mertek v. Blalock, 983 F.2d 1353, 1363 (6th Cir. 1993) (finding that plaintiff sufficiently alleged deprivation of liberty interest, in part by showing "roughly contemporaneous" publication of reasons for ban of plaintiff from city facilities).

Timing is certainly one consideration in determining whether stigmatizing statements are made in the course of the termination of employment. We agree with Plaintiff that publication of defamatory statements need not be strictly contemporaneous with a termination to occur in the course of the termination of employment. That the allegedly defamatory statements occurred several days following the announcement of Plaintiff's termination does not, of itself, defeat his claim. Rather, we agree with the Ninth Circuit's common-sense approach examining the nature of the alleged defamation, as well as its timing, to determine whether it occurred in the course of the termination. See Campanelli, 100 F.3d at 1483. Roughly contemporaneous statements about the reasons for termination are not the same as roughly contemporaneous statements on other matters. What is relevant to our analysis is the "manner in which a public employee is terminated," Miller, 705 F.2d at 373, and the statements made "incident to the termination."

-8-

Siegert, 500 U.S. at 234. We therefore hold that a court must examine both the nature and the timing of an allegedly defamatory statement to determine whether it has been made in the course of an employee's termination.

In this case, the alleged defamation had nothing to do with the reasons for termination, i.e., Plaintiff's abuse of alcohol on the job in violation of the Wyoming substance abuse policy, nor did it have any bearing on the manner of termination. Plaintiff was terminated in a private manner, i.e., by certified letter dated April 22, 1996. Ms. Carson's alleged statements, as represented by the police bulletin, may have reflected that Plaintiff had been terminated, but they were not about the manner or reasons for his termination. Instead, they concerned Plaintiff's potentially violent behavior in the aftermath of termination. While the statements may have injured Plaintiff and may well have affected his opportunities for future employment, they did not occur *in the course of* the termination of employment.

Because Ms. Carson's statements were not made in the course of discharging Plaintiff,[1] Plaintiff has failed to show one of the four essential

[1]Under the test formulated in Workman, 32 F.3d at 481, the defamatory statements "must occur in the course of terminating the employee *or must foreclose other employment opportunities*" (emphasis added). At first blush, it appears that this prong of the test can be met either by statements made in the course of terminating an employee or, in the alternative, by any other statements that might foreclose other employment opportunities. Workman, which was decided on other grounds, did not examine this question. In delineating this

elements that establish a deprivation of a liberty interest under <u>Workman</u>, and we need not address the other three prongs of the <u>Workman</u> test. We conclude that the alleged defamation cannot establish a claim cognizable under 42 U.S.C. § 1983 for deprivation of a constitutional right, and we affirm the district court's grant of Defendant's motion for summary judgment on this claim.

B.

We now turn to the issues raised by the district court's order granting summary judgment to both defendants on the breach of contract claim. Plaintiff, who held his position as superintendent for approximately ten years, argues that he had a permanent appointment at the Wyoming Boys' School. He alleges that the Wyoming Personnel Rules defined his position as a permanent appointment and established an implied-in-fact contract under Wyoming law. He then contends that the State converted his position from a permanent to an "at-will" appointment by its 1996 amendment to § 9-2-2104(a)(viii) of the Wyoming

---

prong of the test, <u>Workman</u> cited <u>Paul</u>, 424 U.S. at 710, and <u>Sullivan v. Stark</u>, 808 F.2d 737, 739 (10th Cir. 1987). As explained in the foregoing analysis, <u>Paul</u> clearly requires that the defamation occur in the course of the termination of employment. <u>Sullivan</u> did not abrogate or minimize this requirement. While the language of <u>Workman</u> may be susceptible to another reading, we conclude that the <u>Workman</u> court did not intend to create a test under which a liberty interest might be infringed by any defamatory statement that might foreclose future employment opportunities.

-10-

Statutes, and he claims that this change in law and his subsequent dismissal as an "at-will" employee violated the Contract Clause of the United States Constitution. The district court determined that any rights Plaintiff may have enjoyed as an employee of the executive branch of Wyoming's state government, including any asserted implied contract rights, were created by statute and could be eliminated by statute. Based on this conclusion of law, the district court granted Defendants' motion for summary judgment. We affirm on different grounds.

Article I, § 10, of the Constitution provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." To prevail on a claim under this clause, a plaintiff must show that (1) a contractual relationship existed, (2) the change in law impaired that relationship, and (3) the impairment was substantial. See General Motors Corp. v. Romein, 503 U.S. 181, 186 (1992).

Nothing in the record nor in the applicable statutes and rules indicates that Plaintiff had either a permanent appointment or an implied-in-fact contract. Prior to its amendment in 1996, the statute at issue provided that the director of the Department of Family Services had the authority and control to "[a]ppoint and prescribe the duties of officers of [such] institutions" as the Boys' School. WYO. STAT. ANN. § 9-2-2104(a)(viii) (1995). Effective March 12, 1996, the amended statute specified that the director shall

> [a]ppoint and prescribe the duties of the superintendent of the
> Wyoming boys' school, the superintendent of the Wyoming girls'

-11-

school and the superintendent of the Wyoming youth treatment center. Each superintendent shall be under the direct authority and control of the director and may be removed by the director at any time without cause.

Id. § 9-2-2104(a)(viii) (1996). It is clear that any appointment made under the provisions of the amended section must be an "at-will" appointment. This interpretation, however, does not necessarily mean that an appointment under the provisions of the statutory section prior to amendment was a permanent appointment. We find nothing in the language of the former section that accords Plaintiff permanent status.

Plaintiff argues that under the Wyoming Personnel Rules, promulgated pursuant to § 9-2-1022(a)(xi) of the Wyoming Statutes, he had a right to be discharged only for just cause after notice and an opportunity to be heard. The personnel rules provide that a *permanent* employee has the right to notice specifying "[t]he reason(s) and summary of the evidence for dismissal," the opportunity to respond to the charge(s), and the right to a hearing on the matter. WYO. ADMIN. CODE, ch. 11, § 3(c)(I). The rules also provide that *non-permanent* employees are "at-will employee[s] who [have] no expectation of continued employment and may be dismissed at any time without cause or reason." Id. at ch. 13, § 1. While the rules set forth the procedures applicable to both groups of employees, they do not classify employees as permanent or non-permanent. Plaintiff has not demonstrated how the rules accord him permanent status, and we

can find nothing in them that conferred permanent status on him in the superintendent's position.

We therefore conclude that neither the applicable Wyoming statutes nor the personnel rules provide evidence of an implied contract. Because Plaintiff has not established that he was a permanent employee, we affirm the district court's grant of summary judgment on the breach of contract claim.

III.

With respect to Plaintiff's ADA claim, a jury found that Plaintiff's disability of alcoholism was not a motivating factor in the decision to terminate him. Plaintiff challenges the district court's jury instructions on the ADA claim. "We review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." United States v. Cerrato-Reyes, 176 F.3d 1253, 1262 (10th Cir. 1999).

A.

Plaintiff asked the court to instruct the jury "that in all cases for purposes of [the] ADA alcoholism is a disability." Appellant's App., Vol. 2 at 597. Plaintiff contends that the court's failure to give this instruction left the jury to

decide the legal issue of whether alcoholism is a covered disability under the ADA.

We have held that alcoholism is a disability under the Rehabilitation Act, 29 U.S.C. § 706(8)(C)(v).[2]  See Williams v. Widnall, 79 F.3d 1003, 1005 (10th Cir. 1996).  We have also observed in dicta that the status of being an alcoholic may merit protection under the ADA.  See Nielsen v. Moroni Feed Co., 162 F.3d 604, 609 (10th Cir. 1998).  At the same time, where the disability at issue is alcoholism, both the Rehabilitation Act and the ADA recognize a dichotomy between the disability and disability-caused misconduct.  See id. at 608.  Although alcoholism may qualify as a disability for purposes of the ADA, an employer "may prohibit . . . the use of alcohol at the workplace by all employees" and "may hold an employee . . . who is an alcoholic to the same qualification standards for employment or job performance and behavior that [it] holds other employees, even if any unsatisfactory performance or behavior is related to the . . . alcoholism of such employee."  42 U.S.C. § 12114(c)(1), (4).  ADA protection, therefore, does not extend to an alcoholic's use of alcohol on the job.

---

[2]Our determination that alcoholism is a disability under the Rehabilitation Act may be relevant to a determination of whether alcoholism is a disability under the ADA.  See 29 U.S.C. §§ 791(g), 794(d).  "Congress adopted the definition of [the] term ['disability'] from the Rehabilitation Act definition of the term 'individual with handicaps.'  By so doing, Congress intended that the relevant caselaw developed under the Rehabilitation Act be generally applicable to the term 'disability' as used in the ADA."  29 C.F.R. pt. 1630, app. § 1630.2(g).

-14-

We assume for purposes of Plaintiff's argument that alcoholism is a covered disability,[3] but we find no reversible error.

Instruction No. 11, which introduces the issue, states in full:

> It is unlawful for an employer to intentionally discriminate against a qualified individual with a disability because of that person's disability. In this case David Renaud claims that the State of Wyoming[] intentionally discriminated against him because he has a disability. He contends that he was terminated from his employment because he is an alcoholic. He contends that he never used alcohol on the job and never was under the influence of alcohol while at work. He contends that the State of Wyoming failed to reasonably accommodate his disability. He contends that [the] State of Wyoming's allegations that he violated its substance abuse policy are only a pretext for terminating his employment because he has a disability.

-------------------

[3]Several circuits have held that alcoholism is a disability under the ADA. See, e.g., Mararri v. WCI Steel, Inc., 130 F.3d 1180, 1180 (6th Cir. 1997); Buckley v. Consolidated Edison Co. of New York, 127 F.3d 270, 273 (2d Cir. 1997), vacated en banc on other grounds, 155 F.3d 150 (2d Cir. 1998); Miners v. Cargill Communications, Inc., 113 F.3d 820, 823 n.5 (8th Cir. 1997); Office of the Senate Sergeant at Arms v. Office of Senate Fair Employment Practices, 95 F.3d 1102, 1105 (Fed. Cir. 1996); cf. Despears v. Milwaukee County, 63 F.3d 635, 635 (7th Cir. 1995) (noting that the parties did not deny that alcoholism is a disability under the ADA). Whether alcoholism is a disability *per se* may raise additional issues. See Burch v. Coco-Cola Co., 119 F.3d 305, 316-17 (5th Cir. 1997) (holding that alcoholism is not a per se disability under the ADA and evidence that alcoholics, in general, are impaired is inadequate to show the substantial limitation of one or more major life activities), cert. denied, 522 U.S. 1084 (1998); see also Wallin v. Minnesota Dep't of Corrections, 153 F.3d 681, 686 n.4 (8th Cir. 1998) (citing Burch and requiring that a plaintiff show impairment of a major life activity), cert. denied, ___ U.S. ___, 119 S. Ct. 1141 (1999); Buckley, 127 F.3d at 274 (citing Burch and requiring the plaintiff to demonstrate both "that he was actually addicted . . . and that this addiction substantially limited one or more of his major life activities").

The State of Wyoming denies this charge. It contends that it did not discriminate against Mr. Renaud because of his disability. It also contends that Mr. Renaud's employment was terminated because of serious misconduct – abuse of alcohol while on the job. It denies that Mr. Renaud requested accommodation for his alcoholism and also denies that it failed to reasonably accommodate his disability.

It is your responsibility to decide whether Mr. Renaud has proven his claim against the State of Wyoming by a preponderance of the evidence, as that term is defined in these instructions.

Appellant's App., Vol. 3 at 727. Similar language is found in Instruction No. 13a which reads in part:

When Mr. Renaud has offered evidence that causes you to conclude that the State of Wyoming took the action complained of because of his disability, he is entitled to recover unless the State of Wyoming proves that it would have taken the same action concerning Mr. Renaud regardless of his disability. . . .

. . . .

On the other hand, your verdict should be for the State of Wyoming if you find that Mr. Renaud has failed to prove that his disability was a motivating factor in its decision or conduct. Your verdict should be for the State of Wyoming if you find that it has proved that it would have taken the same actions regarding Mr. Renaud regardless of his disability.

Id. at 730-31.

Instruction No. 14 tells the jury "to be mindful that the law requires only that employers not discriminate against an employee because of his disability. An employer may demote, remove, discharge or terminate an employee for any other non-discriminatory reason, good or bad, fair or unfair." Id. at 732. This

-16-

instruction explains that Plaintiff may be terminated for misusing alcohol in the workplace as delineated by 42 U.S.C. § 12114(c)(1). Likewise, Instruction No. 20a clearly indicates that the disability of alcoholism, but not disability-caused conduct, is protected:

> Reasonable accommodation for the disability of alcoholism requires that an employee be given time off to participate in a treatment program.
>
> The Americans [w]ith Disabilities Act does not protect alcoholics from the consequences of their misconduct. Alcoholics are held to the same standard of performance and behavior as the employer holds other employees.

Id. at 739. The wording of Instruction No. 23 is also on point: "If you find that defendant Wyoming Department of Family Services intentionally discriminated against David Renaud because of his disability, then you must determine an amount of money that is fair compensation for his damages." Id. at 741. We conclude that these instructions were sufficient to inform the jury that alcoholism is a disability under the ADA. Taken as a whole, the instructions clearly require the jury to determine not whether alcoholism is a protected disability but whether Plaintiff's disability was a basis for his discharge. Accordingly, we hold that the district court did not abuse its discretion in refusing to give Plaintiff's requested instruction.

B.

-17-

Plaintiff also objects to Instruction No. 17 which defines the term "disability" to mean "a physical or mental impairment that substantially limits one of the major activities of life, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, or working." Id. at 735. The district court's definition closely tracks the language of the definition found in the ADA and in the regulations promulgated under the ADA. See 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(I). Plaintiff contends that this instruction suggested that the jury's charge was to determine whether alcoholism was a covered disability. Having studied this instruction in the context of the instructions as a whole, we conclude that the instructions accurately informed the jury of the governing law and that Instruction No. 17 did not mislead the jury about the proper sphere of its inquiry.[4] Our conclusion is

---

[4]Plaintiff argues that this jury instruction may have confused the jury, particularly in light of one portion of the closing argument where Defendant's counsel stated:

> So what I submit is the problem here is not some disability, it's the act of drinking; two different things. If you don't drink, you don't get in trouble, you don't have all those problems related to drinking.

> So I ask you to go back there and consider, is alcoholism in this case even a disability that ought to be talked about under this law? He didn't need something to help him get the job done. It was something different.

Appellant's App., Vol. 2 at 610. Standing alone this line of argument could be

also influenced by the question posed by the "Special Interrogatory and Verdict Form." It asked: "Did Plaintiff David G. Renaud prove that his disability of alcoholism was a motivating factor in the State of Wyoming's decision to terminate his employment?" Id. at 771. This question plainly states that Plaintiff had the disability of alcoholism. The jury's negative response to the query indicates that the jury determined that his disability did not motivate the termination of his employment. We conclude that the district court did not abuse its discretion in giving Instruction No. 17.

IV.

In the final issue on appeal, Plaintiff claims that there was insufficient evidence in the record to support the jury's determination that the Department did not interfere with his rights under the FMLA. Our review is limited to determining whether substantial evidence in the record supports the jury's decision. See Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co., 104 F.3d 1205, 1212 (10th Cir. 1997).

The FMLA provides that employers must allow "eligible employees" up to

---

confusing and the court may have sustained an objection to it, had such an objection been raised. But we cannot agree with Plaintiff that it so "tainted" Instruction No. 17 that, despite the direction given in the instructions as a whole, the jury might have based their verdict on a decision that alcoholism was not a covered disability.

twelve workweeks of leave in any twelve-month period if the leave is requested for one of the purposes enumerated in the statute, including an employee's "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Plaintiff argued to the jury that the Department interfered with his FMLA rights by ending his employment during his leave for the treatment of alcoholism.

We have previously held that "[u]nder FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work." Gunnell v. Utah Valley State College, 152 F.3d 1253, 1262 (10th Cir. 1998) (citing 29 C.F.R. § 825.216(a)). We observed that "an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." Id. The applicable regulation provides that an employee may be laid off if the action would have been taken in the absence of FMLA leave. See 29 C.F.R. § 825.216(a).

In this case, Plaintiff was placed on administrative suspension on April 15, 1996, for investigation of alleged violations of Wyoming's substance abuse policy. The following day he requested and was granted leave and checked himself into an alcohol treatment program. His employment was terminated a few days later. Several employees testified that on March 29, 1996, they had seen

Plaintiff unsteady on his feet, that he sounded intoxicated because his speech was slurred, and that he smelled like alcohol. See Appellant's App., Vol. 2 at 405, 408, 426, 444. Several witnesses also testified that Plaintiff had appeared to be under the influence of alcohol at work on prior occasions. See id. at 412, 429, 441. Ms. Carson testified that she reviewed the statements of these employees and, following an investigation she found "very conclusive," made the decision to terminate Plaintiff because he was drunk. Id. at 583. She stated that she made the decision to terminate without regard to Plaintiff's possible placement in a treatment facility. See id. at 584-85.

This testimony provides substantial evidence upon which the jury may have found that Plaintiff was terminated for using alcohol on the job and that he would have been dismissed regardless of FMLA leave. We therefore conclude that there is substantial evidence in the record to support the jury's finding that the Department did not interfere with Plaintiff's rights under the FMLA.

The judgment of the United States District Court for the District of Wyoming is **AFFIRMED**.