**F I L E D**

UNITED STATES COURT OF APPEALS

**SEP 2 2004**

FOR THE TENTH CIRCUIT

G. GREG VALDEZ,

    Plaintiff-Appellant,

v.

STATE OF NEW MEXICO; CITY OF
LAS CRUCES; DONA ANA COUNTY;
THIRD JUDICIAL DISTRICT
ATTORNEY'S OFFICE; SUSANA
MARTINEZ, Third Judicial District
Attorney, individually and in her official
capacity; LAS CRUCES POLICE
DEPARTMENT, City of Las Cruces
Police Department; BILL BAKER, City of
Las Cruces Police Chief Bill Baker or His
predecessor, individually and in their
official capacity; DONA ANA COUNTY
SHERIFF'S DEPARTMENT; JUAN
HERNANDEZ, Dona Ana County Sheriff;
JOHN DOES I-III, being other unnamed
law enforcement officers employed by
defendants, individually and in their
official capacity; METRO NARCOTICS
AGENCY; METRO NARCOTICS TASK
FORCE,

    Defendants-Appellees.

No. 03-2187
(D.C. No. CIV-02-94 JC/KBM)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court

(continued...)

Before **TACHA** , Chief Judge, **MURPHY** , Circuit Judge, and **CAUTHRON** ,[**] Chief District Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff-appellant G. Greg Valdez appeals the district court's dismissal of his federal civil-rights conspiracy claims with prejudice, under Federal Rule of Civil Procedure 12(b)(6), and dismissal of his state claims without prejudice, based on the court's declining to exercise supplemental jurisdiction, *see* 28 U.S.C. § 1367(c)(3). We affirm, though our analysis departs somewhat from the reasoning of the district court.

Plaintiff, a former elected district attorney for the Third Judicial District, New Mexico, and defendant Susana Martinez, the current district attorney, have engaged in a long-standing rivalry, attributable to political, professional, and

[*](...continued)
generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]     The Honorable Robin J. Cauthron, Chief District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

employment-related differences. According to the allegations in plaintiff's complaint, Martinez mobilized the individual defendants and various law enforcement agencies to carry out a civil-rights conspiracy against him, "designed to . . . place plaintiff in a bad public light so that he would not run against her in the 2000 elections." Aplt. App. at 30, ¶ 26. [1] Plaintiff alleges that defendants also ensnarled his friends, Mike O. Gonzales, Sr., and Mike O. Gonzales, Jr., in the scheme.

Plaintiff's complaint contends that defendants' actions: (1) violated his Fourth Amendment right to be free from illegal search and seizure; (2) infringed upon his rights to due process and "of liberty and to contract;" and (3) trampled his First Amendment right "to assemble and participate in government and politics." *Id.* at 35-36, ¶ 51. In addition, the complaint alleged state claims under the New Mexico Tort Claims Act, contract law, and "for tortious interference with contractual relations, malicious prosecution, retaliation, civil conspiracy, slander, libel and defamation." *Id.* at 25, ¶ 1.

This court will uphold a district court's dismissal under Rule 12(b)(6) "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the

---

[1] The controlling allegations are set out in plaintiff's Second Amended Complaint, Aplt. App. at 24-42.

complaint as true and construing them in the light most favorable to the plaintiff." *Yoder v. Honeywell Inc* ., 104 F.3d 1215, 1224 (10th Cir. 1997) (internal citations omitted). The legal sufficiency of a complaint is a question of law; therefore, a Rule 12(b)(6) dismissal is reviewed de novo. *Sutton v. Utah State Sch. for the Deaf & Blind* , 173 F.3d 1226, 1236 (10th Cir. 1999). We "are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Smith v. Plati* , 258 F.3d 1167, 1174 (10th Cir. 2001) (quoting *United States v. Sandoval* , 29 F.3d 537, 542 n.6 (10th Cir. 1994)). Because the alleged conspiracy is complex and stretches from January through October 1999, this order and judgment discusses each of plaintiff's federal claims separately, in chronological order. [2]

**Illegal Search and Seizure**

Plaintiff claims that in January 1999 defendants launched a criminal investigation, with a focus on the Gonzaleses and plaintiff. Defendants placed two undercover informants in the bar owned by the Gonzaleses, with instructions

---

[2] As a threshold matter, we determine that plaintiff's complaint alleged sufficient facts to demonstrate standing to raise his constitutional claims. *See Utah Animal Rights Coalition v. Salt Lake City Corp*., 371 F.3d 1248, 1255 (10th Cir. 2004) (listing the three elements of Article III standing: injury-in-fact, causation, and redressability).

to describe two television sets as stolen and to offer the sets for sale. In reality, the televisions were purchased with funds from the Metro Narcotics Task Force or Agency. The Gonzaleses, unaware of the investigation, purchased the televisions. Before the Gonzaleses received the televisions, plaintiff asked Mike Gonzales Sr. for information on renting a large-screen television for a planned Super Bowl party. Gonzales offered to lend one of the televisions to plaintiff, who accepted the offer. The informants delivered the television to plaintiff's home for use at his party.

Based on these circumstances, plaintiff asserts a claim of illegal search and seizure. He argues that a search occurred "when the informants crossed the threshold of his premises," delivered the television, and therefore learned that the allegedly-stolen television was in his home. However, a wrongful search or seizure conducted by a private party does not violate the Fourth Amendment. And an informant working for law enforcement authorities is not necessarily an agent or instrument of the government. *See Ghandi v. Police Dep't of City of Detroit*, 823 F.2d 959, 963 (6th Cir. 1987); *United States v. Bazan*, 807 F.2d 1200, 1202 (5th Cir. 1986) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971)).

The courts have identified "'two critical factors'" in determining the status of an informant: "(1) whether the government knew of or acquiesced in the

intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends." *United States v. Blocker*, 104 F.3d 720, 725 (5th Cir. 1997); *United States v. McAllister*, 18 F.3d 1412, 1417 (7th Cir. 1994); *United States v. Malbrough*, 922 F.2d 458, 462 (8th Cir. 1990); *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982). "Other considerations are whether the informant performed the search at the request of the government and whether the government offered a reward." *Malbrough*, 922 F.2d at 462 (citing *United States v. Koenig*, 856 F.2d 843, 847 (7th Cir. 1988)).

Here, the complaint provides no indication that the informants' delivery efforts were conducted on behalf of, or with the knowledge of, law-enforcement officials. It simply states that informants offered the televisions for sale, the Gonzaleses purchased the televisions, the senior Gonzales offered to lend a television to plaintiff, and "the informants themselves delivered the TV to Plaintiff's residence," Aplt. App. at 31, ¶¶ 31. From the complaint, then, it appears that the senior Gonzales and plaintiff arranged for the loan and delivery. As a result, the complaint allegations allow for no reasonable inference of defendants' engineering a delivery to plaintiff's home, acquiescing in informants' entry onto plaintiff's property, or encouraging an illegal search. Accordingly, the informants were not acting as governmental agents and the complaint does not

state a violation of the Fourth Amendment. The district court properly dismissed plaintiff's search and seizure claim.

**Constitutional Contract Claim**

The next event in the alleged conspiracy took place approximately nine months later. On October 17, 1999, the Gonzaleses were arrested for receiving stolen property. Plaintiff was their "family and business attorney," retained "for representation on various business, civil and other legal matters." Aplt. App. at 31, ¶ 34. Upon learning of the arrests, plaintiff went to the police station, intending to provide the Gonzaleses with legal counsel. Defendants, based on their assertion that plaintiff was implicated in the crime underlying the charges against the Gonzaleses, obtained an order from a magistrate judge prohibiting plaintiff from speaking to them. When denied access to the Gonzaleses, plaintiff attempted to obtain a telephonic order from a district court judge rescinding the magistrate judge's ban. Defendants, aware of plaintiff's efforts, transported the Gonzaleses to a location sixty miles away to stave off communications.

Later that day, defendant Martinez held a press conference to announce the arrest of the Gonzaleses. In response to a question, she stated that she had not decided whether or not to criminally indict plaintiff. On the following day, Martinez allegedly commented to a reporter that plaintiff was accused of knowingly receiving stolen property. The reporter did not publish the comment.

Subsequently, Martinez's office issued a criminal complaint that did not name plaintiff as a defendant, but did allege his receipt of a planted television set.

Although plaintiff's argument on his federal contract claim is not entirely clear, he appears to assert a violation of his constitutional right to substantive due process. He maintains that defendants directly interfered with an on-going professional relationship with the Gonzaleses and indirectly discouraged prospective clients from seeking his advice by tainting his reputation. Significantly, however, he does not allege that he has lost the right to practice law or that his license to practice law has been maliciously revoked or suspended. *See Goulding v. Feinglass*, 811 F.2d 1099, 1102-03 (7th Cir. 1987) (finding no allegation amounting to a deprivation of a liberty or property interest where an attorney's rights were not "removed or significantly altered").

The Due Process Clause is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Daniels v. Williams*, 474 U.S. 327, 332 (1986) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)); *see also DeShaney v. Winnebago County Dep't of Soc. Servs*., 489 U.S. 189, 202 (1989) (stating that "the Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation"). To make out a substantive due process claim,

> "a plaintiff must demonstrate a degree of outrageousness and a
> magnitude of potential or actual harm that is truly conscience

shocking. . . . The level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct."

*Livsey v. Salt Lake County*, 275 F.3d 952, 957-58 (10th Cir. 2001) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (internal quotations and citations omitted)). The "ultimate standard" is "whether the challenged government action 'shocks the conscience' of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183-84 (10th Cir. 2002) (citations and quotations omitted). In making that determination, we consider "(1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety." *Id.* at 1184.

Our review of the allegations in plaintiff's complaint in light of the relevant three factors leads us to conclude that it does not allege an actionable substantive due process violation. Neither the disruption of a continued attorney-client relationship with the Gonzaleses nor Martinez's comments shock the conscience. At most, Valdez has a state claim for tortious interference with contract, and he may not avail himself of federal constitutional principles for vindication. Dismissal was the appropriate disposition of plaintiff's federal contract claim.

-9-

**Constitutional Defamation Claim**

Plaintiff's federal defamation claim has much in common with his contract claim. He alleges that Martinez's press conference statement and later comment to the reporter were defamatory and caused his loss of the Gonzaleses as clients and also discouraged potential clients. However, "'defamation, standing alone, [is] not sufficient to establish a claim for deprivation of a liberty interest.'" *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1153 (10th Cir. 2001) (quoting *Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 726-27 (10th Cir. 2000)). To be actionable under the constitution, the defamatory statements (1) "must impugn the good name, reputation, honor, or integrity" of the individual, (2) must be false, (3) "must be published" and (4) "must occur in the course of terminating" employment. *Id.*

There is no need for us to address the first three elements of this claim because plaintiff's allegations plainly do not meet the requisite fourth element.[3] The case of *Workman v. Jordan*, 32 F.3d 475 (10th Cir. 1994), which discussed a procedural due process claim, is instructive on the issue. An individual has

---

[3]    In addition, there is no need to resolve the parties' argument concerning whether plaintiff is a public figure who may not recover damages for false and defamatory statements without demonstrating that the statements were made with actual malice. *See Quigley v. Rosenthal,* 327 F.3d 1044, 1058 (10th Cir. 2003) (describing consequences in a defamation case of public-figure status), *cert. denied* , 124 S. Ct. 1507 (2004).

"a liberty interest in his good name and reputation as it affects his protected property interest in continued employment." *Id.* at 480. However, a plaintiff must show that the "false stigmatizing statements [were] entangled with his interest in employment." *Id.* at 481. Alleging a "loss of future positions [is] too speculative" and "'too intangible to constitute a deprivation of a liberty . . . interest.'" *Id.* (quoting *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989)). *See also Paul v. Davis*, 424 U.S. at 711 (requiring an alteration in legal status).

Here, plaintiff does not allege that he was retained to represent the Gonzaleses on criminal matters. Even in his appellate brief, he argues only that "[a]s a former district attorney . . . [he] would have been the most obvious choice [of] his 'long-time client.'" Aplt. Br. at 14. Further, he alleges no other specific employment opportunities lost as the result of Martinez's statements. Any damage to plaintiff's reputation "'may be recoverable under state tort law but it is not recoverable in a [federal] action.'" *Stidham*, 265 F.3d at 1154 (quoting *Siegert v. Gilley*, 500 U.S. 226, 234 (1991)).

**First Amendment   Retaliation**

Plaintiff alleges that defendants' entire series of actions violated the First Amendment by denying him "the right to associate with the political party of his choice and to assemble with others who supported [plaintiff] in running against

-11-

Martinez for the office of district attorney." Aplt. Br. at 28. The First Amendment protects the right to associate for the purpose of engaging in speech, assembly, petition for the redress of grievances, and the exercise of religion. "[W]hen the State interferes with individuals' selection of those with whom they wish to join in a common endeavor, freedom of association . . . may be implicated." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 678 (2000) (internal quotations and citations omitted).

"For there to have been a violation of First Amendment rights, the defendant's action must have had a deterrent, or 'chilling' effect on the plaintiff's speech." *Eaton v. Meneley,* No. 03-3215, 2004 WL 1730370, at *3 (10th Cir. Aug. 3, 2004). The "standard for evaluating that chilling effect is objective, not subjective." *Id.* And the standard is a "vigorous" one. *Id.* at *5. "[N]ot all insults in public debate become actionable under the Constitution." *Id.* Because public debate is "rough and tumble," plaintiffs "are expected to cure most misperceptions about themselves through their own speech and debate." *Id.* We have explicitly held that "'injury to one's reputation is not enough to defeat constitutional interests in furthering 'uninhibited, robust' debate on public issues.'" *Id*. (quoting *Phelan v. Laramie County Cmty. Coll. Bd. of Trs.*, 235 F.3d 1243, 1248 (10th Cir. 2000) (further citation omitted)).

-12-

The result of *Eaton* illustrates the rigorousness of our standard. In that case, we faced a § 1983 claim against a county and county sheriff, brought by petition-drive organizers who alleged that the sheriff deprived them of their free speech rights by running criminal history checks on them when they attempted to remove him from office through the electoral process. We "strongly disapprov[ed]" of the sheriff's actions. *Id.* at *5. Nevertheless, "[d]espite anything the sheriff had done, the plaintiffs were very much 'free to express [their] views publicly and to criticize' the sheriff's conduct." *Id.* (quoting *Phelan*, 235 F.3d at 1248). We ultimately determined that the organizers' allegations did not state a violation of their constitutional rights.

Similarly, we hold here that plaintiff has failed to state a claim of First Amendment retaliation. Plaintiff's allegations concerning the delivery of the television set, the prohibition of contact with the Gonzaleses, the press conference reference to his possible connection with the reverse sting, the comment to the reporter, and the criminal complaint's mention of his name do not meet the subjective standard for a chilling effect. Plaintiff remained free to express his version of events, either in a political campaign or in contacts with the press. Indeed, plaintiff "had several telephone conversations with the reporter" who was supposedly told that plaintiff was accused of a crime. Aplt. App. at 33, ¶ 41.

In sum, plaintiff has not stated a claim that would support a finding that his First Amendment rights have been violated.[4]

**Conspiracy**

Plaintiff also argues that all defendants should be liable for damages because they joined in a conspiracy to violate his constitutional rights. To plead such a claim, a plaintiff must allege facts sufficient to show both a conspiracy and the actual deprivation of a federally protected right. *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990). Because we have concluded that plaintiff has not successfully pleaded the violation of a federal right, we uphold the dismissal of plaintiff's conspiracy claim.

**Remaining Issues**

The parties' briefs also contain argument relating to the individual defendants' entitlement to qualified immunity, Martinez's entitlement to absolute immunity, and the municipality's liability. In addressing qualified immunity issues, the court must first consider whether the plaintiff alleged a deprivation of an actual constitutional right and, if so, whether the plaintiff showed the right was

_____

[4]     In his brief, plaintiff appears to maintain that he has alleged a direct denial of First Amendment rights and also a retaliation claim.     *See* Aplt. Br. at 28-29. Under the alleged circumstances of this case, we discern no distinction between the two claims and conclude that plaintiff has not stated a First Amendment claim in any context.

clearly established at the time of the alleged violation. *See Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Here, we have concluded that plaintiff did not allege a violation of constitutional rights, so we do not reach the second inquiry. For the same reason, we do not parse Martinez's claimed entitlement to absolute immunity for various alleged offenses and we do not separately analyze the liability of the municipality.

The judgment of the district court is AFFIRMED.

Entered for the Court

Robin J. Cauthron
Chief District Judge