FILED
United States Court of Appeals
Tenth Circuit

**December 13, 2007**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK EVERS,

Plaintiff - Appellant,

v.

THE REGENTS OF THE
UNIVERSITY OF COLORADO;
GEORGIA LESH-LAURIE, in her
individual and official capacities; W.
JAMES SMITH, in his individual and
official capacities; JAMES SHORE, in
his official capacity,

Defendants - Appellees.

No. 06-1065

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 04-cv-2028-PSF-PAC)**

---

Nora Kelly, Denver, Colorado, for Plaintiff - Appellant.

Sonja McKenzie, Senter, Goldfarb & Rice, L.L.C., David Temple, Associate
University Counsel, University of Colorado, (Thomas S. Rice and Elliot J. Scott
of Senter, Goldfarb & Rice, L.L.C. and Patrick T. O'Rourke, Associate University
Counsel, University of Colorado, with them on the brief), Denver, Colorado, for
Defendants - Appellees.

---

Before **MURPHY**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

Mark Evers was employed by the University of Colorado at Denver (UCD) as the Managing Director for the Extended Studies Office (the ESO) of the College of Liberal Arts and Sciences beginning in 1999. UCD is one of several campuses of the University of Colorado (the University). *See* Colo. Rev. Stat. § 23-20-101(b). His supervisor was defendant W. James Smith, the Dean of the College. The Chancellor of UCD was Georgia Lesh-Laurie. Mr. Evers was terminated in 2002. At the time of the termination two newspapers publicized a University report that accused him of financial irregularities.

Mr. Evers filed suit in the United States District Court for the District of Colorado alleging various claims against the Regents of the University and several employees in their official capacities (the University Defendants), and against Smith and Lesh-Laurie in their individual capacities (the Individual Defendants). The district court granted summary judgment in favor of all defendants on all claims. On appeal Mr. Evers challenges only the district court's grant of summary judgment on his claim under 42 U.S.C. § 1983 that he was denied his liberty interest under the Fourteenth Amendment's Due Process Clause by the defendants' dissemination of the University report without providing him a name-clearing hearing. We affirm the judgment in favor of the Individual Defendants but reverse the judgment in favor of the University Defendants and remand for further proceedings.

The accusations against Mr. Evers arose out of three incidents. First, in recognition of some of his employees' extra efforts in 2001, Mr. Evers granted them time off with pay without approval from Dean Smith. (We refer to this as the administrative-leave incident.) Second, in December 2000 he granted one of his employees paid time off from his regular duties to prepare for a foreign teaching assignment. (We refer to this as the foreign-teaching incident.) Third, in June 2001 he paid a different ESO employee for full-time work for a week after she had begun employment elsewhere. (We refer to this as the termination-date incident.)

In March 2002 the University's Department of Internal Audit began an investigation of possible fiscal misconduct in the ESO, preliminarily concluding that there had been no fraud or fiscal misconduct. But before issuance of a final report, one of the auditors was removed from the investigation because of an alleged conflict of interest. New auditors completed the investigation and issued a final report (the Audit Report) in August 2002. The Audit Report described the allegations against Mr. Evers, made factual findings regarding both the allegations and his asserted defenses, and drew conclusions regarding compliance with University policies. The conclusions were adverse to Mr. Evers on all three incidents. On the administrative-leave incident it said:

> *Making misrepresentations on three subordinates' University monthly Time and Leave Reports in order to conceal leave time taken to which the subordinates were not entitled.*

Subject did knowingly sign his approval on Time and Leave Reports that falsely reported no leave time, when in fact both he and the subordinates knew time off had been taken.

Aplt. App. Vol. 1 at 204. Similarly, on the foreign-teaching incident it determined:

> *Making misrepresentations on one subordinate's University appointment documentation to allow the subordinate additional paid time off to prepare for teaching two courses in a foreign country.* Evidence indicates Subject directed subordinates to submit appointment documentation for the Dean's approval that misrepresented the actual agreement between the parties.

*Id.* And it concluded as follows regarding the termination-date incident:

> *Making misrepresentations on one subordinate's University Termination paperwork to allow for the subordinate to receive continuing full-time compensation after commencing another full-time position outside the University.*
> Subject knowingly approved a termination date that was seven paid days beyond the actual date she began employment elsewhere. Evidence suggests that this was done to compensate her for the remaining "administrative leave" agreed to, but not taken, prior to her resignation, totaling 56 hours. We found no evidence to support the number of hours she actually worked.

*Id.* The Audit Report's overall conclusion was: "It is our judgment that sufficient evidence exists to reasonably conclude fiscal misconduct has occurred, warranting disciplinary action." *Id.* at 205. The University's Department of Internal Audit website states that "Fiscal misconduct involves intentional acts or failures to act in order to obtain unauthorized or unlawful gain. The primary factor that distinguishes fiscal misconduct from error is the intent of the person taking the underlying action." *Id.* Vol. 2 at 247.

-4-

Mr. Evers denies that his actions constituted fiscal misconduct because he did not intend to violate, and believed his actions were consistent with, both University policy and applicable law. Regarding the administrative-leave incident, he asserts that he believed that he had the authority to grant administrative leave without his supervisor's approval. Although he admits that he signed time records for these employees that did not reflect the administrative leave he had granted them, he denies that he made misrepresentations because the forms required reporting only vacation time and sick leave. With respect to the foreign-teaching incident he denies that he made any misrepresentation about his agreed arrangement with the employee for the time off to prepare to teach. And as to the termination-date incident he claims that the employee worked a full eight hours for the ESO each day during her last week of employment. He disputes the Audit Report's finding that he misrepresented the employee's termination date to compensate her for promised administrative leave, and he claims that he gave the auditors information to verify his position.

On August 12, 2002, Smith notified Mr. Evers that he would be assigned to other duties for the next 30 days and then terminated. Smith admitted in his deposition that one of his reasons for terminating Mr. Evers was the audit of the ESO, and there is evidence that Smith had received a draft copy of the Audit Report before notifying Mr. Evers of his termination. The final Audit Report was issued on August 15, but Mr. Evers did not receive a copy of it until August 27.

-5-

He claims that he was not afforded an opportunity to contest the allegations in the report, or to appeal its findings or conclusions, "to clear [his] name of the allegations before the Report was released to the press." Aplt. App. Vol. 2 at 256. On August 29 an article appeared in the University's newspaper detailing the charges in the Audit Report. The article repeated the allegations of "falsification" and "misrepresentation," as well as the report's ultimate conclusion that "fiscal misconduct" had occurred, warranting disciplinary action against Mr. Evers. Aplt. App. Vol. 1 at 113. The next day a similar article appeared in the Rocky Mountain News, headlined "CU-Denver official punished over funds." *Id.* at 115.

After Mr. Evers's termination became effective on September 11, 2002, he received a letter from Chancellor Lesh-Laurie indicating that the Board of Regents had delegated her to respond to the Internal Audit investigation and informing him of the decision to keep the Audit Report in his permanent file for three years. The letter also stated, "After reviewing the facts presented in the investigation, we believe that fiscal misconduct appears to have occurred. However, although we believe intent to deceive was shown, it is clear also that you did not believe you were acting unlawfully in permitting the leaves that you approved." *Id.* Vol. 2 at 345.

A year later Mr. Evers obtained a teaching position at the University of Denver. The position's responsibilities are significantly different from those he

had at UCD and the pay is substantially less.  He claims that publication of the Audit Report has precluded him from applying for some jobs and that he has not been interviewed or even contacted with respect to other positions for which he has applied.  He complains of the stigma on his reputation, which, he contends, is critical to a position in higher education.  He asserts that he has been deprived of his ability to pursue the occupation of his choice:  a position similar to the one he held at UCD, preferably in Colorado.  He continues to search for job openings of this nature.

## I. DISCUSSION

We review a district court's grant of summary judgment de novo, applying the legal standard under Fed. R. Civ. P. 56(c).  *See Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 726 (10th Cir. 2000).  Rule 56(c) provides that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  We view the evidence in the light most favorable to the party opposing summary judgment.  *See id*. at 726.

*Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994), sets forth a four-part test that a plaintiff must satisfy for a liberty-interest claim:

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee.  Second, the statements must be false.  Third, the statements must occur in the

course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published. These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest.

(citations omitted). A person who establishes a liberty-interest deprivation is entitled to a name-clearing hearing. *See id.* at 480. We first consider the judgment in favor of the Individual Defendants and then turn to the University Defendants.

## A.   INDIVIDUAL DEFENDANTS

Mr. Evers argues that summary judgment on his liberty-interest claim should be reversed because the district court erred in concluding that he had failed to come forward with evidence that the statements in the Audit Report were false. Lack of evidence of falsity was the basis for the court's grant of summary judgment in favor of the University Defendants. But the summary judgment in favor of the Individual Defendants relied on a different ground: that Mr. Evers failed to establish that either Smith or Lesh-Laurie made or was otherwise culpable for the statements at issue. Because Mr. Evers does not address, let alone argue, this ground in his appeal briefs, we affirm the summary judgment in favor of the Individual Defendants. *See GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1388 (10th Cir. 1997) (affirming summary judgment when plaintiff failed on appeal to address alternative ground relied on by district court).

## B.     UNIVERSITY DEFENDANTS

Stating that Mr. Evers had admitted the underlying actions described in the Audit Report and disputed only the "conclusions drawn therefrom," the district court ruled that he had failed to come forward with enough evidence of the falsity of statements in the Audit Report to warrant a trial against the University Defendants on his liberty-interest claim. Aplt. App. Vol. 2 at 535. The court rejected his contention that "because there is no indication of personal gain or of the requisite intent to commit fraud, a material issue of fact exists regarding the report's falsity." *Id.* It noted further that any intent to deceive is "questioned and downplayed in the report itself," which concludes that his actions were "'*either* an attempt to deceive, or exceptionally bad judgment.'" *Id.* at 536 (quoting Audit Report) (emphasis added). The court concluded that "the report here simply attempted to set forth the universe of plaintiff's plausible motives in acting in a manner deemed fiscal misconduct in violation of University policy. . . .  While neither conclusion is compl[i]mentary toward plaintiff, neither are these alternatives both false." *Id.* at 537–38.

Based on our de novo review of the record, we respectfully disagree. Mr. Evers came forward with evidence (largely his own sworn testimony) sufficient to establish a triable fact issue regarding the falsity of statements in the Audit Report. First, Mr. Evers expressly disputed the report's assertions that he made misrepresentations in the foreign-teaching and termination-date incidents.

The record reflects that, as described above, Mr. Evers's version of these events was materially different from the findings in the Audit Report. And with respect to the administrative-leave incident, although Mr. Evers did not dispute the substantial truth of the Audit Report's description of his actions, he challenged the nontrivial conclusions regarding his intent. The report charged him with *fiscal misconduct*, which, according to the University's own explanation of this term, requires "intentional acts or failures to act in order to obtain unauthorized or unlawful gain." *Id.* at 247. According to the explanation, "The primary factor that distinguishes fiscal misconduct from error is the intent of the person taking the underlying action." *Id.* Thus, key to the charge of fiscal misconduct was Mr. Evers's intent in taking the undisputed actions. But intent is the "quintessential factual question." *United States v. Bohl*, 25 F.3d 904, 909 (10th Cir. 1994). Although the district court characterized the Audit Report as "simply attempt[ing] to set forth the universe of plaintiff's plausible motives in acting in a manner deemed fiscal misconduct," Aplt. App. Vol. 2 at 537, we read it as asserting more. Indeed, if Mr. Evers only used bad judgment or, as he asserts, made a good-faith attempt to follow applicable policy and law, then the charge of fiscal misconduct was unfounded. Therefore, we hold that there were material fact issues in dispute regarding the falsity of the charge of fiscal misconduct. Summary judgment on the falsity element of the claim cannot be sustained.

## II.   ALTERNATIVE GROUNDS FOR AFFIRMANCE

The University Defendants urge us to affirm summary judgment on Mr. Evers's liberty-interest claim on several alternative grounds. First, they point out that the district court noted that Mr. Evers had offered no evidence of the University's "vicarious liability" for the statements about him. *Id.* at 535. In our view, however, it is unclear whether the district court relied on this ground in granting summary judgment. More importantly, Mr. Evers is correct that the University Defendants did not raise the issue in their summary-judgment motion, so he had no opportunity to respond below. At oral argument before this court the attorney for the University Defendants contended that Mr. Evers was on notice that he needed to present evidence of the University's vicarious liability because the Individual Defendants' motion for summary judgment asserted that neither Smith nor Lesh-Laurie had disseminated the Audit Report to the press and that placement of the report in his personnel file did not constitute publication. But even if the University Defendants can take advantage of a motion for summary judgment that they did not join, the Individual Defendants' motion hardly placed Mr. Evers on notice that he needed to present his entire argument and all his evidence regarding conduct by University personnel (including persons other than Smith and Lesh-Laurie) upon which the University's liability could be based. It would be unfair to affirm a summary judgment against a plaintiff for lack of evidence of an element of the cause of action unless the defendant has

clearly challenged that lack of evidence in district court. We therefore decline to affirm summary judgment on this ground. *See Tavery v. United States*, 32 F.3d 1423, 1427 n.5 (10th Cir. 1994).

The other two grounds for affirmance urged by the University Defendants were raised in their summary-judgment motion but not resolved by the district court. First, they argue that the allegedly harmful statements were not made in the course of Mr. Evers's termination because he was terminated before the issuance of the Audit Report and for reasons other than the report, which, they note, did not call for his termination. *See Renaud*, 203 F.3d at 727 (requiring that statements occur in course of terminating employee). Second, they contend that because Mr. Evers has presented no evidence that any prospective employer was aware of the Audit Report or the newspaper articles, and in any event he has obtained another job, he cannot establish that other employment opportunities were foreclosed. Rather than examining and resolving the merits of these contentions, however, we adopt the better practice of leaving the matter to the district court in the first instance. *See Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1238 (10th Cir. 2005) ("Where an issue has been raised, but not ruled on, proper judicial administration generally favors remand for the district court to examine the issue initially.").

## III.    CONCLUSION

The district court's grant of summary judgment on Mr. Evers's liberty-interest claim against the Individual Defendants is AFFIRMED.  The district court's grant of summary judgment on Mr. Evers's liberty-interest claim against the University Defendants is REVERSED and REMANDED.