**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 31, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARY ANN MORENO,

    Plaintiff - Appellant,

v.

CIRCLE K STORES, INC.,

    Defendant - Appellee.

No. 24-1058
(D.C. No. 1:22-CV-2327-NYW-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

For many years, Mary Ann Moreno worked as a cashier for Circle K

Stores, Inc. In 2020, she had the misfortune of having a customer in possession

of a knife enter the store and demand free cigarettes. After she declined to

provide them, the man went behind the counter and helped himself. Circle K

managers later reviewed video-audio recordings taken by the store cameras and

determined that Moreno's response to the shoplifter had violated its "Confront

& Chase" policy. For that alleged violation, Circle K fired Moreno.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Moreno sued, alleging that Circle K had wrongfully discharged her for acting in self-defense, despite her having a right to self-defense under the Colorado Constitution, its statutes, and the common law. Moving for summary judgment, Circle K argued that Moreno was dischargeable as an at-will employee. It also raised two preliminary—and potentially dispositive—issues: namely, that Moreno had failed to raise a genuine dispute of material fact either on (1) whether her actions amounted to self-defense or (2) if they did, whether Circle K fired her for using self-defense.

The district court did not address these two potentially dispositive grounds, instead choosing to decide the case on a difficult legal issue of first impression under Colorado law—whether Colorado would recognize a public-policy exception to the at-will employment doctrine for employees whose conduct had been self-defense. Having taken that route, the district court ultimately concluded that Colorado would not as a matter of public policy recognize a self-defense exception to the state's at-will employment doctrine. It granted Circle K summary judgment solely on that basis.

On appeal, Moreno first asks us to certify the public-policy question to the Colorado Supreme Court, or, alternatively, to decide the issue differently than did the district court. Of course, Circle K asks that we affirm the district court's legal ruling, or, alternatively, to grant it summary judgment by affirming on another ground—that in the district court Moreno failed to raise a genuine dispute that she used self-defense or that Circle K fired her for using

2

self-defense. Exercising jurisdiction under 28 U.S.C. § 1291, we vacate the district court's order granting summary judgment and remand for the district court to resolve the self-defense and causation questions.

## BACKGROUND

### I.    Factual Background

During Moreno's employment at Circle K, the company had a "Confront & Chase" policy, which instructed employees, in part, not to "confront follow, pursue, track, chase, fight or follow [inside and/or outside] any person[s] suspected of shoplifting products and/or cash from the site, beer runs or any other confrontational situation." App. vol. II, at 316. As for the question whether Moreno raised a genuine issue of material fact about her conduct being self-defense, both parties point us to the store's video-audio recording, which captured the minute-long encounter between Moreno and the shoplifter. So that a reader has perspective on our ruling, we recount what we see and think we hear, all subject to contrary fact-finding by the district court on remand.

In 2020, Tyler Wimmer entered the Circle K store and lined up at the checkout counter, where Moreno was the cashier. As he stood waiting, Wimmer clutched to his chest a loose collection of scattered items, which from the blurry video appear to include among other things a knife, a packaged knife, a pair of pliers, and perhaps a water bottle.

After the customer in front of him completed his business, Wimmer stepped forward and foisted his items into a sliding pile on the checkout

3

counter. Gesticulating with his empty left hand, he asked Moreno for a pack of Marlboro Red 100's. After Moreno retrieved the cigarettes from the display wall behind her, Wimmer said something like, "I get them for free," to which Moreno asked, "What?" *Id.* at 317, 00:20–00:30. Wimmer responded, "They're for free." *Id.* Moreno replied, "Yeah, right." *Id.* Wimmer said, "All right fine," and began mumbling and opening his wallet. *Id.* at 00:30–00:37. In response to some other statement, Moreno said something like, "Well, I need your ID." *Id.* Wimmer asked her again to give him the cigarettes for free, and Moreno told him, "This is not my business, I don't own the company, I can't give stuff away." *Id.* at 00:45–00:55. Wimmer asked, "Really?" *Id.* She replied, "Really." *Id.* By then, Wimmer had re-gathered his items and clutched them to his chest with his right arm and hand. As best as we can see, the unpackaged knife was in his left hand.

Wimmer took a step back from the counter and turned but then turned back to Moreno, asking, "You mean, really?" *Id.* at 00:55–01:05. She replied, "Really." *Id.* At that, Wimmer said, "Damn," and turned the opposite direction and walked out of the camera's range. *Id.* But a couple of seconds later, he was back in view, saying, "Just give 'em to me." *Id.* at 01:04–01:10. Moreno responded, "I can't. I'll lose my job." *Id.* Wimmer said, "Man," and began walking the opposite direction as he had before (both ways apparently have exits). *Id.* at 01:10–01:12.

As Wimmer neared the end of the counter to its entrance space, Moreno was scratching her back with her left hand. Wimmer announced, "I'm coming behind" and began walking behind the counter. *Id.* at 01:11–01:15. Moreno lowered her left arm, pointed her index finger, and said, "Don't come back here." *Id.* Wimmer said, "I have to get it." *Id.* at 01:14–01:18. She repeated, "Don't come back here." *Id.*

Wimmer shifted the knife from his left hand to the collection of loose items clutched against his chest. He said, "I have to get it. I appreciate ya," and kept his attention on the cigarette display. *Id.* at 01:15–01:22. At the same time, Moreno leaned toward him and grabbed his left arm. Despite her having a grip on his bare left forearm, Wimmer slid left to reach for the cigarettes. As he did so, Moreno kept her left hand on his forearm and grabbed under his left elbow with her right hand and pulled back with both her hands. But Wimmer was stronger and succeeded in pushing his arm toward the cigarettes and grabbing some.

By then, Moreno still had a tight grip on the underarm part of Wimmer's t-shirt. She said, "I'm calling the cops," released her grip, and pushed off from him. *Id.* She turned and took a step toward the counter and leaned toward something evidently used to alert the police. Wimmer walked back around to the front of the counter, saying, "Thank you," as he was leaving. *Id.* at 01:20–01:25. Before he had gotten clear of the cashier's counter on his way out of the

5

store, Moreno turned her back to him and stooped to pick up a cigarette package that had been knocked or dropped to the floor. That ends the video.

Later that night, police officers arrested Wimmer. Over the next two days, three Circle K managers reviewed surveillance footage from the store's cameras. After doing so, they decided to fire Moreno under Circle K's "Confront & Chase" policy. *Id.* at 316. The managers have all filed declarations saying that they honestly believe that Moreno did not use self-defense.

## II.  Procedural & Legal Background

Moreno sued in state court, bringing only state claims. Circle K removed the case to the United States District Court for the District of Colorado, invoking diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446. Once in federal court, Moreno filed an amended complaint. Relevant here, her complaint alleged that Circle K had wrongfully terminated her in violation of Colorado public policy by firing her for exercising her right to self-defense.[1] *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 107 (Colo. 1992) (establishing that an at-will employee has a cognizable claim for wrongful

---

[1] Moreno also alleged Circle K discharged her because she was a victim of crime, and she brought a claim for intentional infliction of emotional distress. She did not appeal the district court's grant of summary judgment for those claims. The only claim before us is Moreno's claim for wrongful discharge in violation of public policy based on self-defense.

6

discharge if the discharge "contravenes a clear mandate of public policy" (internal quotation marks omitted)).

In support of its motion for summary judgment, Circle K made three arguments. First, Circle K argued that the video indisputably shows that Moreno did not act in self-defense. Second, it argued that she had not been fired for using self-defense, because "the decisionmakers honestly believed she was not acting in self-defense." App. vol. II, at 251. And third, it argued that "[s]elf-defense is not a clearly expressed public policy sufficient to support a wrongful-discharge claim." *Id.* at 250–51.

Moreno responded that she had raised a genuine dispute about whether Circle K had fired her for using self-defense and that her claim survived the at-will employment doctrine because Colorado would recognize a public-policy exception when an employee was discharged for having acted in self-defense.[2]

The district court granted Circle K's motion for summary judgment. In its summary-judgment decision, the district court did not address the parties' arguments "as to whether there are genuine disputes of fact" about whether Moreno used self-defense and about whether Circle K fired Moreno for using

---

[2] Her case involuntarily removed to federal court on diversity-of-citizenship grounds, Moreno asked the district court to certify to the Colorado Supreme Court the unsettled question of "whether the right to self-defense when an employee perceives an attack from a customer is an exception to the at-will employment doctrine." App. vol. IV, at 613. The district court declined to do so. *Moreno v. Circle K Stores, Inc.*, 713 F. Supp. 3d 1069, 1080 n.6 (D. Colo. 2024).

self-defense. *Moreno v. Circle K Stores, Inc.*, 713 F. Supp. 3d 1069, 1080 (D. Colo. 2024). Rather, the district court concluded that Moreno's "wrongful termination claim is not viable to the extent it is based on a self-defense theory," because she had not "met her burden of demonstrating that a public-policy exception to the at-will employment doctrine applies" for self-defense. *Id.* In granting summary judgment for Circle K, the district court predicted that the Colorado Supreme Court would not recognize self-defense as a public-policy exception to the at-will employment doctrine. *Id.* at 1078–79.

Moreno appealed, raising one issue:

> On *de novo* review, did the district court err in determining that the right to self-defense against an unprovoked physical assault is not a public policy exception to the at-will employment doctrine that provides the basis for a wrongful discharge action?

Op. Br. at 7. Moreno then filed a motion asking us to certify the public-policy question to the Colorado Supreme Court.

## DISCUSSION

The parties presented three dispositive issues to the district court: (1) whether Moreno used self-defense, (2) whether Circle K fired her for using self-defense, and (3) whether self-defense could support a wrongful-discharge claim under Colorado's public-policy exception to the at-will employment doctrine. The first two issues were narrow, concrete, and fact-bound to this case. The third issue asked an important, unsettled question of state law involving statutory and constitutional interpretation.

8

The district court declined to address both factual issues and tackled the third issue—furnishing a legal prediction about Colorado law that was unmoored from the facts of the case. That ruling is now presented to us for review. But we think the cart got before the horse. Aware of our role as a federal court sitting in diversity jurisdiction, we decline to journey into answering questions of first impression under state law without first testing whether our—or the Colorado Supreme Court's—answer to that legal question is needed to resolve this case.

Exercising prudence and our statutory authority, we vacate and remand for a more complete analysis that addresses the preliminary, potentially dispositive issues. 28 U.S.C. § 2106 (authorizing remands for further proceedings when "just under the circumstances"); *see Beer v. United States*, 564 U.S. 1050 (2011) (mem.) (vacating and remanding for consideration of a dispositive question that went unaddressed by the lower court); *Barr v. Matteo*, 355 U.S. 171, 172–73 (1957) (vacating and remanding for consideration of a dispositive "ground far narrower than that on which the [lower court] rested its decision").

As support for the remand, we also rely on *Kerns v. Bader*. 663 F.3d 1173, 1190 (10th Cir. 2011) (vacating without reversing). There, we remanded for the district court to analyze whether the § 1983 plaintiff had shown the second prong of qualified immunity—clearly established law. *Id.* at 1181–83, 1190. We did so after expressing uncertainty about whether plaintiff had shown

9

a constitutional violation and after determining that the district court had not decided whether plaintiff had shown the requisite clearly established law in his favor. *Id.* at 1181–82. Wanting to avoid "a needless constitutional question," we "remand[ed] to ensure the district court addresse[d] the second element before we beg[an] to tangle with a case on appeal." *Id.* at 1182. Otherwise, we "risk[ed] confronting difficult constitutional questions without the benefit of a full analysis from the district court." *Id.* at 1181–82. This aligns with our now remanding on the preliminary, possibly dispositive, issues before reaching the difficult Colorado public-policy issue, if it turns out we need to do so.

The needlessness point is particularly important because we may well not need to decide Moreno's public-policy argument to resolve this case. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 306 (1979) (advising federal courts to avoid unnecessarily issuing "tentative decisions on questions of state law" that risk creating needless "friction in federal-state relations" (internal quotation marks omitted)). Though within its power, the district court fielded an uncertain state-law question without addressing two genuine-dispute arguments that may have obviated the need for federal predictions about the meaning of state law. Given that posture, we choose not to engage a complicated state-law question before the district court has tested whether Moreno has raised a genuine dispute of material fact on self-defense or causation. We "should avoid passing on questions of public law . . . that are not immediately pressing." *Barr*, 355 U.S. at 172 (internal quotation marks

10

omitted); *see also Camreta v. Greene*, 563 U.S. 692, 707 (2011) ("In general, courts should think hard, and then think hard again, before turning small cases into large ones.").

For these reasons, we remand. We decline Circle K's invitation to resolve the preliminary issues ourselves on the district-court record. The better course here is to leave "the matter to the district court in the first instance." *Evers v. Regents of Univ. of Colo.*, 509 F.3d 1304, 1310 (10th Cir. 2007). "That course bears the advantage of allowing the adversarial process to work through the problem and culminate in a considered district court decision, a decision that will minimize the risk of an improvident governing appellate decision from this court." *Kerns*, 663 F.3d at 1182.

We intimate no opinion about the correctness of the district court's ultimate decision granting summary judgment. On remand, the district court should resolve the preliminary summary-judgment questions. If the district court finds self-defense triable, it should address whether a reasonable juror could find that Circle K terminated Moreno because she used self-defense.[3]

---

[3] The parties debate what's required to establish causation for Moreno's claim. Beyond recognizing that causation is an element of the claim, neither party cites binding Colorado law for their respective approaches to causation. We leave that debate to the district court to address on remand, if appropriate.

## CONCLUSION

We vacate the district court's summary judgment order and remand for reconsideration consistent with this order. For now, we deny Moreno's motion to certify.

Entered for the Court


Gregory A. Phillips
Circuit Judge